McQUIDDY v. WARE *et al., Appellants.*

**Practice in Supreme Court**: DEFECT OF PARTIES: AMENDMENT: RE-MITTITUR. Plaintiffs, as heirs of one who died seized of certain land, recovered in an action of ejectment a larger interest in such land than they were entitled to. Upon appeal, they asked leave of this court to add, as parties plaintiff, the names of other heirs representing the excess of interest recovered; *Held,* that this amendment could not be allowed; that the remedy in such case, where there is no other error in the record, is for plaintiffs to enter a *remittitur.*

**Adverse Possession**: CONSTRUCTIVE POSSESSION, TENANCY IN COMMON. Where land, of which one was the sole owner in fee, and an interest in other land, of which he was the owner as one of several heirs, was conveyed by the same deed, and the grantee took actual possession of the land first mentioned; *Held,* that this did not give him constructive possession of the interests of the other heirs in the land last mentioned; and, although he paid taxes upon this land, and took stone and timber off it for building purposes, and made some rails and fed some cattle on it; . *Held,* that these acts were entirely consistent with his interest, as a tenant in common in the land, and could not constitute adverse possession as against his co-tenants.

*Appeal from Nodaway Circuit Court.*—Hon. H. S. KELLEY, Judge.

The court, on its own motion, instructed the jury as follows:

1.   The patent read in evidence from the United States to John McQuiddy, vested the legal title to the land in controversy in the said John McQuiddy; then, if the jury find, from the evidence, that said John McQuiddy died seized of said land, and that the plaintiffs are the children and grand-children, heirs-at-law of the said John McQuiddy, said plaintiffs have a perfect legal title to the land in controversy, and are entitled to the possession of the same as against the defendants, unless the defendant, John H. Ware, Sr., has acquired title to the same by adverse possession; and if you find for the plaintiffs, you should assess their damages for all waste and injury committed upon the land, and for the rents and profits of the same

during the time defendants have used it, or for not exceeding five years next before the commencement of this suit, and also the value of the present monthly rents and profits. The plaintiffs only claim five-sixths of the land in controversy, and if you should find for plaintiffs you should form your verdict and finding accordingly.

2. The deeds read in evidence by the defendants do not invest the title to the lands in controversy in the defendant, John H. Ware, Sr., but if you find from the evidence that said deeds, or any of them, purport on their face to convey to said John H. Ware, Sr., the lands in controversy, together with other lands purchased by said Ware, Sr., and that all of said land were adjoining and all included in one tract or body, such deed or deeds would constitute a color of title to the lands so included in said deeds; and if you find from the evidence that the defendant took actual, open and notorious possession of a part of said lands, and so included in said deed, and in one lot or body, in good faith, under a claim of title and ownership of the whole of said lands, his possession would extend by construction to all the land embraced in said tract and included in said deed; then, if you find from the evidence that the defendant, John H. Ware, Sr., himself, or by his tenants or agents, has been in open, notorious and continuous possession of said lands, or any part of the same, under such color of title to the whole, claiming the same adversely to said plaintiffs, and said John McQuiddy, their ancestor, in good faith, for ten years or more next before the commencement of this suit, you should find for the defendants.

3. But if the jury find from the evidence that the land in controversy was sold as the land of Thomas J. McQuiddy, in connection with other lands owned by said Thomas, and that said Thomas had no right or title to the land in controversy, except as heir of John McQuiddy, and the said John H. Ware, Sr., knew that said Thomas did not own this land in controversy, then such deed or

deeds to said Ware would not invest any title in said land in him, except as to one-sixth, and would not constitute a color of title so as to enable him to hold constructive possession of the land in controversy by taking actual possession of the other lands included in said deed which were owned by said Thomas J. McQuiddy, and in that case, in order to acquire title to the land in controversy by adverse possession, he, the said Ware, Sr., must have occupied it openly and notoriously under a claim of ownership, in good faith, for the period of ten consecutive years.

4.   In determining the nature of defendants' title, and whether the said John H. Ware, Sr., claimed the land in controversy in good faith, adverse to the plaintiffs and said John McQuiddy, under whom they claim, the jury may take into consideration any acts, declarations, statements and admissions shown by the evidence to have been made by the said Ware, Sr., in relation to said land, or the ownership thereof, and the jury may give such weight to any such acts and statements as they may believe they are entitled to; and .if the jury believe, from the evidence, that the defendant, Ware, Sr., knew that his supposed title to said land in controversy was worthless as to the claim of plaintiffs, and that the legal title was in John McQuiddy's heirs, and surrendered, verbally, his supposed claim to said land to the heirs of said John McQuiddy, or to Thomas McQuiddy, acting for said heirs, upon the payment to him, said Ware, Sr., of the taxes, costs and penalties for the redemption of the said lands in controversy in this suit, from tax sale, thereby giving the said heirs or their agent to understand and believe that said Ware held no claim on said land, you should find for the plaintiffs.

5.   If the jury find, from the evidence, that said Ware, Sr., himself, or by his agents or tenants, have had actual, continuous, visible possession of the land in controversy, claiming the same adversely to the plaintiffs and John McQuiddy, for ten years consecutively before the commencement of this suit, you should find for the de-

fendants. This possession is not constructive, it must have been by occupation or cultivation, if the lands were adapted to actual occupation or cultivation, or by other acts of ownership upon and in relation to said land, which were visible, notorious and continuous for the period of ten years, such as that, if the true owner had visited the land he would have been advised thereby of the claim and possession of said land by the defendants. The fact that Thomas J. McQuiddy may have mortgaged the land, and the said Ware, Sr., and his agents may have put deeds on record, paid the taxes, cut wood and timber on it occasionally, and hauled stone from it, under claim of title, are proper to be considered by the jury in determining the question of the possession and ownership of the lands in controversy. But these facts would not, of themselves, be such possession as would invest the title of the land in the defendant, Ware, Sr., although continued for ten years, under claim of right, unless the land was not susceptible of more definite and actual possession, or unless such acts and claim of owership were known to the said John Mc-Quiddy or the parties holding the legal title, and known by him or them to have been so done under a claim of title or right adverse to his or their title; and the fact that the land may have been timbered land, or the greater portion of it, does not alter the case, if it was adapted to cultivation and improvement or occupation, although it might have been more valuable as timbered land when used in connection with other lands.

*John Edwards* for appellants.

1. The first instruction given by the court was clearly erroneous. Plaintiffs' several interests amounted in the aggregate to one-third nearly of the land in controversy, and this was all the plaintiffs were entitled to recover under the proof and the pleadings in the case. The court should have so declared. 1 Wag. Stat., Chap. 50, § 10;

*Gray v. Givens*, 26 Mo. 291. If plaintiffs showed owner-
ship and right of possession to about one-third only of all
the land, then defendants, being in possession, were enti-
tled to hold the remaining two-thirds against all persons
except the true owner. *Fugate v. Pierce*, 49 Mo. 441;
*Griffith v. Schuenderman*, 27 Mo. 412; *Schultz v. Arnot*, 33
Mo. 172.

2. The fifth instruction is not the law as applicable
to the facts in the case. The owners of the legal title lived
in the State of Tennessee, and may never have had actual
knowledge of the possession of defendants. If, however,
the acts of ownership of defendants were open, visible and
notorious, and done under color and claim of title, they
were sufficient in their character, whether defendants knew
of them or not. *Scruggs v. Scruggs*, 43 Mo. 142. The in-
struction seems to imply that the acts of ownership enu-
merated were not, in themselves sufficient notice of
defendants' possession, if the land was susceptible of more
definite and actual cultivation, unless such acts were
known to plaintiffs. The acts were sufficient to constitute
open, visible and notorious possession. (*Menkens v. Oven-
house*, 22 Mo. 70; *Draper v. Shoot*, 25 Mo. 197; *Ware v.
Johnson*, 55 Mo. 500.) The colorable titles of defendant,
John H. Ware Sr., being duly acknowledged and recorded,
were constructive notice to plaintiffs. (*Crispen v. Hanna-
van*, 50 Mo. 536.) The latter part of this instruction
conveys the idea that the acts of ownership above men-
tioned must, in order to be sufficient, be known to the
plaintiffs, notwithstanding the land was timbered, or the
greater part of it, and, on that account, more valuable
when used in connection with other lands. In other words,
a party claiming by colorable title and adverse possession,
must put the land in actual cultivation, and improve and
occupy it, even though it might be more valuable to him
as timbered land when used in connection with other lands;
otherwise, his possession is not sufficient unless known to
the true owner. In this respect the instruction was erro-

neous, for it requires more notorious acts of ownership from such claimants than the real owners would exercise over the land. The usual acts of ownership, used in the statute, (2 Wag. Stat., Cap. 89, Art. 2, Sec. 5,) are such only as the true owner would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. (*Menkens v. Ovenhouse,* 22 Mo. 75.)

*Hudgens & Davis* for respondents.

1. Defendants having failed to raise the objection to the petition of a defect of parties plaintiff, the objection was waived, and cannot be raised in this court. 2 Wag. Stat., pp. 1014, 1015, Secs. 6 and 10 ; *Kerr v. Bell,* 44 Mo. 120 ; *Reugger v. Lindenberger,* 53 Mo. 364 ; *Boal v. Morgner,* 46 Mo. 48 ; *Ames v. Gilmore,* 59 Mo. 537.

2. The attention of the circuit court was never, in any manner, at any time, before, during, or after trial, called to the alleged defect of parties plaintiff; and this court will consider no exception to any proceedings in the circuit court, except such as shall have been expressly decided by such court. Wag. Stat., p. 1067, Sec. 32 ; *S't. B't. Thames v. Erskine,* 7 Mo. 213 ; *Saxton v. Allen,* 49 Mo. 417 ; *Russell v. Whitely,* 59 Mo. p. 199 ; *Curtis v. Curtis,* 54 Mo. 351 ; *Fickle v. St. L., K. C. & N. R. R. Co.,* 54 Mo. 219.

3. The chief issue upon the trial was, whether the heirs of John McQuiddy, deceased, were entitled to the possession of the premises, as against the defendants, and no error was committed which materially affects the merits of the action, to the prejudice of defendants. (Wag. Stat., 1067, Sec. 32.) Nor affecting the substantial rights of defendants. Wag. Stat., 1034, Sec. 5; *Papin v. Massey et al.,* 27 Mo. 445 ; *Orth v. Dorshlein,* 32 Mo. 366; *Wells v. Zallee,* 59 Mo. 509.

4. Of the instructions given on the court's own motion, the objection now made by appellants, is founded

upon the alleged defect of parties plaintiff, that as only part of the heirs sued, only part could be recovered, but as any such defect was waived by failure to demur or answer setting up such defect, the objection falls.

5. The 5th instruction directed the jury properly, as to possession not constructive. Such possession should be such as to impart notice thereof to the true owner, upon visiting the land. *Fugate v. Pierce*, 49 Mo. 443 ; *Musick v. Barney*, 49 Mo. 463 ; 2 Wash. Real Prop. 494 ; *Draper v. Shoot*, 25 Mo. 203.

HOUGH, J.—This was an action of ejectment, instituted at the November term, 1874, of the Nodaway circuit court, by a portion of the heirs of John McQuiddy, for one hundred and sixty acres of land in Nodaway county, of which said McQuiddy· died seized, described as follows: The southeast quarter of the northeast quarter, and the northeast quarter of the southeast quarter of section nine, and the southwest quarter of the northwest quarter, and the northwest quarter of the southwest quarter of section ten, township sixty four, range thirty-seven. The defendants claimed title by adverse possession.

John McQuiddy, the ancestor of plaintiffs, died in 1863, leaving six children: Thomas J. McQuiddy, Newton R. McQuiddy, Caroline Newton, George McQuiddy, Mary C. King and Mary E. Wells. The last three named died before suit was brought. Newton R. McQuiddy was not made plaintiff, and during the trial plaintiffs dismissed as to Thomas J. McQuiddy, his interest in the lands in controversy having been sold on an execution against him in favor of Silas Mozingo, November 2nd, 1863; at said sale Silas Mozingo bought said interest, received a deed for the same, and subsequently conveyed it to defendant, John H. Ware, Sr.

George McQuiddy left seven children, six· of whom were made plaintiffs. Mary C. King left nine children,

only one of whom joined in the suit.   Mary E. Wells left two children, neither of whom were made parties.

Under the instructions of the court the plaintiffs recovered five-sixths of the land sued for.   They were really

*1. PRACTICE IN SUPREME COURT: defect of parties: amendment: remittitur.* entitled to less than one third.   Plaintiffs now ask leave of this court to add, as parties plaintiff, the names of other heirs representing the excess of interest recovered in the court below. This amendment cannot be allowed.   The most liberal construction ever placed by this court upon the statute of jeofails, will not justify such a practice.   Conveyances may have been made by the parties proposed to be added, or other defenses may exist against them.   The remedy in such a case where there is no other error in the record, is for the plaintiffs to enter a *remittitur.*

The deed from Mozingo and wife to John II. Ware, Sr., which was dated March 17, 1864, conveyed all the es-

*2. ADVERSE POSSESSION; constructive possession, tenancy in common.* tate of Thomas J. McQuiddy in the land of John McQuiddy, and in two hundred and forty acres of other lands belonging to Thomas J. McQuiddy, lying contiguous thereto.   The entire tract of four hundred acres was known as the McQuiddy land.   Thomas McQuiddy lived upon his own land from 1856 until 1861, when he removed therefrom and occupied the same by his tenants until March, 1864, when the defendants went into possession, and so continued until the commencement of this suit.   The defendants took stone and timber off the land in controversy for building purposes, and paid taxes on it.   They also made some rails there, and fed some cattle on it in the winter of 1864–5.   With the exception of thirty or forty acres of prairie, the land sued for is timbered and brush land.   The prairie land had been fenced by the defendants four or five years before the trial.   The remainder of the tract was uninclosed.

In March, 1871, Thomas J. McQuiddy, as agent for the heirs of John McQuiddy, repaid to John II. Ware, Sr.,

6

all the taxes paid by him on the land in controversy, and took from him the following receipt:

"MARYVILLE, Mo., March 21, 1871.

"Received of Thomas J. McQuiddy, agent for the heirs of John McQuiddy, deceased, the sum of twenty-nine and $\frac{24}{100}$ dollars, in full for the taxes, interests and costs on the following described real estate, that is to say: the southwest qr of the northwest qr of section 10, and the northeast qr of the southeast qr of section 9, and the northwest qr of the southwest qr of section 10, all in township 64, of range 37, the same being double the amount of the purchase money, as purchased by John H. Ware, Sr., for the taxes of 1865, 1866 and 1868; also, the sum of seventy-nine and $\frac{70}{100}$ dollars, in full for all subsequent taxes on the above described land, and also to include the southeast qr of the northeast qr of section 9, in same township and range, for all subsequent taxes up to date.

Given under my hand, this 21st of March, 1871.

JOHN H. WARE, SR."

There was testimony showing that Thos. J. McQuiddy had mortgaged a part of the land sued for to Nodaway county, for school money; and there was testimony tending to show that John H. Ware, Sr., told Thomas McQuiddy at, or about the time of the settlement in 1871, that he had no claim upon his father's land, except for the taxes he had paid upon it. Neither the deed from the sheriff to Mozingo, nor the deed from Mozingo to Ware, purported to convey the land in controversy, but only Thomas McQuiddy's interest in the land. By these conveyances Ware became a tenant in common with the plaintiffs in John McQuiddy's land; and it may well be doubted whether the possession by the defendants of Thomas McQuiddy's land, under a conveyance which included also Thomas McQuiddy's interest in John McQuiddy's land, amounted to a constructive adverse possession of John McQuiddy's land. All the acts done by Ware, in connection with the land in suit,

were entirely consistent with his real relation thereto, which was that of a tenant in common, and if actual notice had been given to the heirs of all that the defendants did upon the land, it would not have amounted to notice to them that the defendants claimed their interest in the land, or that he claimed any greater interest therein than was conveyed by his deed. As a tenant in common, he had a right to use the stone and timber upon the land, and it was his duty to pay the taxes; and he had a right to have an account taken of these matters, between himself and his co-tenants, in making a sale, or division of the estate.

In order to present more clearly the precise relations of the plaintiffs and defendants, let us suppose that Thomas McQuiddy had himself sold and conveyed to the defendants, his interest in his father's land, and the fee in his own land, which adjoined it, and that the defendants had entered into the possession of Thomas McQuiddy's land. Would it be pretended that such possession would constitute a constructive possession of the plaintiffs' interest in their father's land? We think not.

There was no actual possession of any portion of the tract sued for until a short time before suit, and the acts of ownership exercised over the land were entirely consistent with the defendants' interest in it.

One circumstance which we have hitherto forborne to mention may now be noticed. At a foreclosure sale under the mortgage made by Thomas McQuiddy of part of this land, Ware became the purchaser of a forty acre tract, but the deed therefor was not put upon record until 1872, and it cannot, therefore, in any manner aid his plea of adverse possession. The settlement made in 1871, of the taxes on the land, with Thomas McQuiddy, as the agent of the heirs, shows very clearly that Ware properly appreciated his rights in the land, and claimed no more than he was entitled to under the deed from Mozingo. The instructions given by the court were much more favorable to the de-

fendants than the views we have expressed would warrant. Certainly no error was committed in them against the defendants. For the error as to the amount of the recovery the judgment will be reversed and the cause remanded, with directions to the circuit court to render a judgment for the plaintiffs for their real interest in the land, upon a *remittitur* being filed for the excess, otherwise to proceed to a new trial of the cause. All concur.

                                                        REVERSED.