Foltz v. Wert et al.

No. 11,904.

## FOLTZ v. WERT ET AL.

JUDGMENT.—*Rights of Assignee.*—The assignee of a judgment takes merely the rights held by his assignor.

SAME.—*Lien of, Subject to Prior Equities.*—The general lien of a judgment creditor upon the lands of his debtor is subject to all equities existing against such lands, in favor of third persons, at the time of the recovery of the judgment.

SAME.—*Will be Restricted to Actual Interest of Judgment Debtor.*—Courts of chancery will restrict the lien of a judgment to the actual interest of the judgment debtor, so as to protect the rights of those having prior equities in the property or its proceeds.

CONTRACT.—*Presumption that Parties Entering Into are Adults.*—When nothing appears to the contrary, it will be presumed that persons entering into an agreement are adults, and competent to contract.

PARTITION.— *Will. — Advancements. — Contract. — Lien. — Trust. — Statute of Frauds.—Review of Judgment.*—A testator devised all of his real and personal property to his wife for life, and at her death what remained was to be divided equally between his children. While acting as executrix of the will, the widow, in consideration of an oral agreement between herself and such children, that the amount received by each should be charged against his share in the final partition of the real estate, surrendered the personal estate to the children, each receiving a portion differing in amount from that received by the others. This distribution was reported to and approved by the court. After the death of the widow there was partition accordingly. On a complaint by the assignee of a judgment against one of the sons, for a review of the judgment in the partition proceeding,

*Held,* that it was competent for the mother and children to agree to the distribution so made.

*Held,* also, that, under the agreement, the sum received by each child will be regarded in equity as an advancement.

*Held,* also, that the agreement was not the creation of a lien upon or the declaration of a trust in the real estate. .

*Held,* also, that the rights of the others in the common estate could not be

impaired by liens acquired on the interest of one without their consent, nor could they be deprived of any right incident to partition.

*Held*, also, that the agreement having been so far executed as that the personal property was distributed under it, it is too late for the plaintiff to interpose the statute of frauds, even if the agreement were within its terms.

JUDICIAL SALE.—*Inchoate Interest of Wife.*—*Remainder.*—Under sections 2483 and 2508, R. S. 1881, when a judicial sale is made of any land in which the husband has a heritable interest, the inchoate one-third of the wife, where the judgment does not bar her rights, vests and becomes absolute in her. A remainder in fee is such an interest.

From the Marion Superior Court.

*R. B. Duncan, J. S. Duncan, C. W. Smith* and *J. R. Wilson,* for appellant.

*R. N. Lamb* and *S. M. Shepard,* for appellees.

MITCHELL, C. J.—The foundation of the proceedings exhibited in the record before us is a complaint to review the proceedings and judgment of the Marion Superior Court in a partition suit. This complaint embraces the record of the partition suit, consisting of the complaint, answer, replies, decree and motion for a new trial and rulings thereon, and alleges, under various specifications, that error of law is apparent on the face of the record and proceedings.

A demurrer was sustained to the complaint for review, and, refusing to amend, judgment was given against the appellant.

The record of the partition suit discloses that, upon issues made, the court found that the allegations of the complaint therein filed were true, and upon facts found partition was decreed, and the rights of the parties adjusted substantially as set forth in and according to the prayer of the complaint.

Whether the ruling on the complaint for review is maintainable or not, depends in the main upon whether the facts stated in the petition for partition warrant the decree which was made to rest upon it.

The complaint for partition alleges that Joseph Wert died testate, on the 3d day of June, 1872, leaving as his legatees his widow, Rebecca A. Wert, and four children, John W.,

Edwin A., Frank A., and Benjamin C. Wert; the will is, made the basis of the rights of the plaintiffs in the proceeding for partition and is set out in the complaint. The first and second clauses are as follows: "Item 1. To my beloved wife, Rebecca Ann Wert, I devise and bequeath all my property, real and personal (after my just debts are paid), to have and to hold the same for the term of her natural life. Item 2. At the death of my said wife, it is my will that all my real estate and personal property remaining shall be divided equally between my children, with this proviso, however, that until the youngest of said children shall be of age, the others shall have no power to sell or dispose of the said property; and it is my will that none of the real estate which I may own at the time of my death shall be sold, nor any money then at interest be withdrawn or encroached upon in any manner, unless in case of strict necessity, all other means having first been exhausted." Item 3 names the wife as executrix.

It is averred that the testator died seized of certain real and personal property, and that after his death certain other real estate was purchased by the consent of those interested, with funds belonging to the estate. It is further averred that the personal estate, consisting of notes, stocks and money, amounted to about $15,000.

It appears that after the death of the testator, and while his widow was acting as executrix of his will, she advanced to the sons from time to time moneys derived from the personal estate, notes, stocks, bonds, etc., the use of which was bequeathed to her during her lifetime. These advancements were made under an agreement, mutually entered into between the mother and sons, to the effect that an account should be kept of the moneys and notes distributed to each, and that in the final partition and distribution of the estate, the amounts received by each should be charged against his share, so that the shares should in that manner be equalized in the end. It appeared that the money and notes received by the four sons

under this arrangement amounted in the aggregate to $16,-454. Of this, John W. had received $6,843.17; Frank A., $4,-792.01; Edwin A., $1,927.20, and Benjamin C., $2,891.31. After this agreement, and the distribution under it, were made, the mother resigned her trust as executrix, and on the 15th day of September, 1876, Jesse Jones was appointed administrator *de bonis non.* On the 4th day of January, 1879, he made his final report as such and was discharged. In this report and account, the distribution above mentioned was exhibited to the court, and the agreement under which it was made was substantially recited.

The mother and sons respectively signed a writing attached to and filed with the report, in which they consented to the settlement report, and referred to the agreement therein recited, ratifying and confirming it. The report and settlement were approved, and the administrator discharged.

It was averred in the complaint that John W. Wert had used the moneys advanced to him in business, became insolvent, and had been adjudged a bankrupt; that, on the 5th day of December, 1877, long after the money was advanced, and the agreement above referred to made, Fletcher & Churchman recovered a judgment against him, and afterwards, on November 29th, 1879, sold his interest in the land described to satisfy an execution issued on their judgment, for $1,737.01; that they became the purchasers at the sheriff's sale, and received a certificate of purchase which they afterwards sold and assigned to Jones & Foltz who, it is alleged, had notice of the agreement and distribution above referred to. It is also averred that the assignee in bankruptcy, as such assignee, sold the interest of John W. Wert in the lands of which partition was asked, to Jones & Foltz in 1879.

The complaint contained the further averment that Lillian E. Wert, wife of John W., never joined in any conveyance or encumbrance of his interest in the lands, and that, by reason of the foregoing sales, she had become entitled to an undivided one-twelfth part in value of his interest.

The mother died April 1st, 1879, and the suit for partition was commenced the following December by Edwin A., Frank A., Benjamin C. and Lillian E. Wert, against Jesse Jones and Howard Foltz. Fletcher & Churchman are also named as defendants.

The prayer of the petition was that the several amounts received by the parties interested should be taken into the account and their shares equalized according to the terms of the agreement, and that the interest of Lillian E., wife of John W., should be protected.

Foltz answered to the merits; the other defendants disclaimed any interest.

At the final hearing, it was agreed that the real estate was not susceptible of partition. A commissioner was appointed accordingly, with directions to sell and distribute the proceeds according to the rights of the parties as fixed by the decree.

It was adjudged that from the interest held by Foltz in the right of John W. there should be deducted the sum received by him under the agreement mentioned, with interest from the 4th day of January, 1879, amounting to $7,436.47, and the balance paid over to Foltz; that one-twelfth part of the net proceeds of the sale should be paid to Lillian E. for her interest as the wife of John W. Wert.

The controversy is between Foltz, who claims the share of John W. without diminution on account of the advancements, and the brothers and wife of John W., who claim that the advancements made to him should be taken into the account and charged against his share according to the agreement, and that the rights of his wife should be protected, under section 2508, R. S. 1881.

Foltz, having taken the assignment of the Fletcher & Churchman certificate with notice of the agreement between the widow and sons of the testator, and of the advancements made under it, can claim no right superior to, or different from, the rights of his assignors. To the extent that the judgment in favor of Fletcher & Churchman became a lien on

the interest of John W., that lien or interest was transferred to him. The rights acquired by him were the same as those through whom he acquired them.

It is well settled, " that the general lien of a judgment creditor, upon the lands of his debtor, is subject to all equities which existed against such lands in favor of third persons, at the time of the recovery of the judgment." Courts of chancery will so control the legal lien of the judgment as to restrict it to the actual interest of the judgment debtor in the property, so as to protect the rights of those who have a prior equitable interest in such property or its proceeds. *Hays* v. *Reger*, 102 Ind. 524; *Armstrong* v. *Fearnaw*, 67 Ind. 429; *Wharton* v. *Wilson*, 60 Ind. 591; *Huffman* v. *Copeland*, 86 Ind. 224; *Monticello Hydraulic Co.* v. *Loughry*, 72 Ind. 562; *Jones* v. *Rhoads*, 74 Ind. 510.

If, then, the lien of Fletcher & Churchman's judgment bound only the actual interest which John W. Wert had in the common estate at the time the judgment was taken, and if the appellant stands in the shoes of the judgment creditors, it results that whatever equities the appellees could have asserted against John W. Wert, they may now assert against the appellant, whose rights are of no higher degree. This is not seriously disputed.

It is contended that the distribution or advancements made by the widow were contrary to the provisions of the will, which directed that the real and personal property should be divided at her death, and that none of the real estate should be sold, nor the moneys withdrawn from interest or encroached upon, unless in case of necessity, until the youngest child should become of age. Section 1190, R. S. 1881, which provides that the court shall not order or affirm partition of any real estate contrary to the intention of the testator as expressed in his will, is also referred to as an obstacle in the way of enforcing the agreement.

As the partition suit was not commenced until after the death of the widow, and as it does not appear but that the

youngest child had attained full age before the distribution and agreement were made, it is not perceived that either the statute above referred to or the will exerts any influence on the question. When nothing appears to the contrary, persons entering into an agreement will be presumed to be adults and competent to contract.

It is insisted next that the arrangement between the widow and sons was an attempt to create a lien upon John W. Wert's interest, in the nature of a mortgage by parol, or an attempt to create a parol trust. The proposition that this can not be done is maintained upon authority.

We think, however, that neither the principles nor authorities invoked are in that respect applicable to the case in hand. The testator's sons had a common interest in the real and personal property devised under the will. Their mother had an unqualified right to the use of the whole during her lifetime. Being *sui juris,* it was competent for the mother and sons to agree to the distribution of the personal estate before the death of the mother, and there was nothing to prevent them from agreeing that the amount turned over to each in advance of the time when, by the terms of the will, they would have been entitled to receive it, should be treated as an advancement, and equalized in the final partition of the estate.

To all intents and purposes money or property, thus delivered to the sons by the mother, was so much advanced to them out of property, the use of which she might have continued to enjoy during her lifetime. Without any agreement we think the sums so received would have been treated as advancements, but whether advancements within the contemplation of section 1189, R. S. 1881, we need not inquire. It is beyond question that under the agreement referred to they should be so regarded in equity.

The primary purpose of the testator was to make ample provision for his widow during her lifetime, and to effect an equal division of his real and personal property between his

sons at her death. The widow, to aid her sons, surrendered her right to the personal estate upon the consideration that the sums received by each should be treated as advancements, and the shares equalized in the final partition of the real estate. This agreement accomplished the purpose of the testator substantially, was mutually beneficial to the sons, and was capable of being specifically enforced, after it was so far executed as that the mother had surrendered, and the sons received, the personal property under it.

It was not necessary that the agreement should have been in writing in order that it might be equitably enforced. The agreement was not the creation of a lien upon or the declaration of a trust in land. The rights of the parties arose *ex æquo et bono*, upon the distribution or advancements made under it. Each tenant in common was seized of the land *per my et per tout*. Each had the right to hold the title until all equities relating to the tenancy were adjusted. The enforcement of the rights of co-tenants arising out of the property in which they have a common interest, bears a close resemblance to the enforcement of rights between partners. Freeman Cotenancy and Part., section 269.

Although an equitable lien in a proper case might arise by parol, it is not necessary to determine that question in this case.

The title of the several cotenants could not be divested or severed by proceedings in partition except upon equitable terms. Until their equities under the agreement were adjusted, each held the title to the whole as security for its performance, and thus no necessity existed for creating a lien in the nature of a mortgage by parol, or declaring a parol trust. *McCaslin* v. *State, ex rel.,* 44 Ind. 151; *Huffman* v. *Cauble,* 86 Ind. 591; *Felton* v. *Smith,* 84 Ind. 485; 3 Pomeroy Eq. Jur., section 1239, *et passim.*

The rights of one cotenant in the common estate can not be impaired by liens acquired on the interest of the other without his consent. His rights are superior to the rights of

the lien-holder, and he can not be deprived of any right incident to the partition. *McCandless' Appeal*, 98 Pa. St. 489.

As the appellant stands in no better attitude than the judgment debtor, and as against him the moneys received from his mother would have been treated as an advancement, as it was agreed they should be, we can perceive no equitable ground upon which he can successfully oppose the decree in partition. *Johnson* v. *Hoyle*, 3 Head, 56 ; *Wharton* v. *Wilson,* *supra; Monticello Hydraulic Co.* v. *Loughry, supra.*

Even if the agreement were one which was void at the time it was made, it has been so far executed as that the personal property was distributed under it.    This distribution was reported to the court in writing, and it, and the agreement under which it was made, ratified by the written assent of all interested in it, having been executed so far by the parties concerned, it is not in the power of one occupying the position of the appellant to interpose the statute of frauds now, even though it had happened that the agreement was within its terms.    *Savage* v. *Lee*, 101 Ind. 514 ; *Hays* v. *Reger, supra ; Dixon* v. *Duke*, 85 Ind. 434 ; *Morrison* v. *Collier*, 79 Ind. 417.

The point is also made that the court erred in awarding to Lillian E., wife of John W. Wert, one-third of the share to which her husband would have been entitled. The argument is that under section 2491, R. S. 1881, a wife is entitled to one-third of all the real estate of which her husband was seized in fee simple during marriage, in the conveyance of which she had not joined, and that as John W. Wert had but an estate in remainder in the lands sold under the Fletcher & Churchman judgment, his wife had no inchoate interest which became absolute under section 2508.

We think this position untenable.    The estate of John W. Wert, although not to be enjoyed until after the estate of the life tenant terminated, was nevertheless a fee simple, capable of descending to his heirs.

While it is true, that by the common law a wife was not

entitled to dower out of an estate in remainder, expectant on an estate of freehold, for want of actual seizin in the husband, it is not believed that the strict rule of the common law is applicable under the statutes in force here. The subject of dower was involved in much complex and abstruse learning at common law, much of which as applied to our system is obsolete.

In the enactment of the statute abolishing dower, and substituting in its place an estate in fee simple, it was the manifest policy of the Legislature to make more liberal provision for the wife. We think the interest which the wife of John W. Wert took in the lands in question must be determined by a consideration of sections 2483 and 2508, R. S. 1881.

Under section 2483, one-third of all the lands in which a husband has, at the time of his death, a heritable interest, subject to certain provisions in favor of creditors, depending upon its value, descends in fee simple to the widow.

Under section 2508, where lands of the husband, in which the wife has an inchoate interest, are sold at judicial sale, her rights not having been barred by the judgment, the inchoate interest of the wife vests, and becomes absolute precisely as in the case of his death. Section 2491 determines the estate of a widow in the lands of which her husband " may have been seized in fee simple at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law." This section has no application to lands of which the husband dies the owner.

If John W. Wert had died on the 29th day of November, 1879, the day on which the lands were sold on execution, no doubt could be entertained, but that the one-third of the real estate in question would have descended to his widow under section 2483. Under section 2508, the land having been sold at judicial sale, she took an absolute estate in one-third, exactly as she would have, in case her husband had died.

Moreover, it is disclosed in the record, that the life ten-

ant died April 1st, 1879, and that the sale on execution was not made until November 29th, 1879. This was after the seizin of the remainder-man became perfect both in *deed* and in *law*. Whatever application the rule contended for might have under other circumstances, it can have none here.

We have considered the question relating to the subject of interest computed on the sums distributed, and are of opinion that no error was committed in that regard which should subject the judgment to review.

We find no error in the ruling of the superior court, and its judgment is accordingly affirmed, with costs.

Filed Oct. 28, 1885.