Beck v. Kallmeyer.

HENRY W. BECK, Guardian, etc., Appellant, v. ERNST KALLMEYER *et al.* Respondents.

St. Louis Court of Appeals, December 9, 1890.

1. **Will:** CONSTRUCTION OF. If a testatrix devises all her property to two devisees in equal shares, subject, however, to a provision that one of the devisees shall, during his minority, receive out of her estate a certain amount per annum more than the other, such amount is to be taken out of the entire estate, and not from the share of the latter devisee.

2. **Tenants in Common:** MORTGAGE OF UNDIVIDED MOIETY: PRIORITY OF LIEN OF OTHER COPARCENER FOR RENTS COLLECTED BY MORTGAGOR. If one tenant in common mortgages his undivided interest, and collects the rents accruing from the property, the lien of the coparcener for his share of these rents takes priority over the mortgage; and the rule applies as to rents collected either before the mortgage, or after the mortgage and prior to its foreclosure; nor is it affected by the ignorance of the mortgagee of the fact, that the mortgagor has collected the rents.

3. **Judgment:** PRIVIES: ADMINISTRATION. If one of two devisees, to whom realty is devised in common, becomes the executor of the testatrix, and as such collects the rents arising from such realty, and if he is thereafter removed from the executorship, and one, who is the guardian of the other devisee, is appointed administrator *de bonis non* of the estate of the testatrix, and thereon such administrator recovers against him judgment for his indebtedness to the estate, in which is included the amount of the rents collected by him, such minor devisee will not be debarred by such judg-from asserting in subsequent partition proceedings a lien for his share of the rents thus collected, he and the administrator not being privies.

4. **Partition:** ACCOUNTING FOR RENTS. An accounting for rents in a proceeding for partition may be had, if the proceeding be one in equity, but not if it be statutory. And *held* in the case at bar, which was an action by the minor devisee mentioned above, that the averments of the petition were sufficient to make the proceeding one in equity.

5. **Legacy:** WHEN A CHARGE ON LAND. A legacy is not an implied charge upon the land of the testator, if he left sufficient personalty for the payment of it. But *held* that the land in the case at bar was chargeable with the legacy, if there was no personalty, or if the personalty did not suffice for its payment.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED (*with directions*).

*Mills & Flitcraft*, for appellant.

*Rassieur & Schnurmacher*, for respondent Weichman.

*James Carr*, for respondent Vanhardenburg.

BIGGS, J.—This is a proceeding in partition, in which a controversy has arisen concerning the proper disposition of the money arising from the sale of the property. The facts in respect of the title to the real estate may be stated as follows:

Ernst Henry Kallmeyer, Sr., died testate in 1880. At the time of his death, he owned the property partitioned, which consists of three separate tracts or parcels, one of which he occupied as a homestead. It is conceded that the part, so occupied, was within the limits and value allowed by law to a homesteader. Kallmeyer left surviving him his widow, Maria Kallmeyer, and two minor sons, namely: Louis Kallmeyer, the plaintiff, who is represented in this action by Henry W. Beck, his guardian, and Ernst Henry Kallmeyer, Jr., one of the defendants. The latter arrived at full age in 1883, and Louis will attain his majority in June, 1892. The entire property in controversy was devised in fee simple to the widow. After the death of the elder Kallmeyer, his widow and two minor children continued to occupy the homestead until her death, which occurred on the seventh day of March, 1885. Maria Kallmeyer left a will, and the aforementioned real estate was devised to her two sons by the following provision in her will : "The rest and residue of all my real estate, and personal, and whether present or expectant, of

which I may die possessed, I hereby give and bequeath absolutely to my two beloved sons, Ernst Henry Kallmeyer and Louis Kallmeyer, in equal shares. This bequest is made with the following modification, however, that, should I die during the minority of my beloved son, Louis Kallmeyer, at present thirteen years of age, he shall have out of my estate two hundred dollars per annum extra, until his majority; and, therefore, in that event, more than his brother, Ernst Henry Kallmeyer, which money I desire to be used to complete his education and to learn a trade of his choice." The oldest son was named executor of the will without bond. Letters testamentary were granted to him by the probate court without requiring the usual bond, and he continued in the administration of the estate until the revocation of his letters on the twenty-first day of October, 1886.

It was conceded on the trial that Ernst Henry Kallmeyer, Jr., between the seventh day of March, 1885, and the twenty-first day of October, 1886, collected the rents of the entire estate amounting to $1,878.03, of which sum $448.50 was collected from the homestead; that no part of the rents had been paid to Louis Kallmeyer, the other joint owner, and that Ernst Henry Kallmeyer was insolvent. Whether the rents were collected by Ernst as executor or cotenant, was a matter of controversy on the trial, and is made a matter of contention in this court. In this connection it may be well to state that it is admitted that no debts were allowed against the estate of Maria Kallmeyer; that the probate court made no order, requiring the executor to take charge of the real estate, and that no such power was conferred upon him by the will.

The following additional facts touching the title to the lands, and the right of Louis to have his share of the rents collected by Ernst made a charge upon the latter's interest, are conceded: Ernst, on the sixth day of April, 1886, conveyed his interest in the real estate

to the defendant Albert Kann, in trust to secure the payment of five notes in favor of the defendant, F. Weichman : one principal note for seventeen hundred dollars, due two years after date, and four interest notes for fifty-one dollars each, due in six, twelve, eighteen and twenty-four months, respectively. This action was begun on the first day of March, 1887, and Kann and Weichman were made codefendants with Ernst H. Kallmeyer. The defendant Kann was served with notice of the suit on the fourth day of March, 1887, and, on the following day, his codefendants were served. On the fifteenth day of March, 1887, the defendant Kann, as trustee, sold the property under the Weichman deed of trust, and Weichman became the purchaser. On the same day, Weichman sold and conveyed the real estate to the defendant, Peter J. Vanhardenburg, and the latter immediately reconveyed it to the defendant Schnurmacher, in trust to secure the payment of the purchase money, to-wit, seventeen hundred dollars. Vanhardenburg and Schnurmacher, having acquired an interest in the property after the commencement of the suit, were subsequently made parties defendant to the action. It also appears from the agreed statement of facts that, when the letters of Ernst Kallmeyer on his mother's estate were revoked, the probate court granted letters of administration *de bonis non* to Charles M. Whitney, who, at that time, was the acting guardian of Louis Kallmeyer ; that afterwards, on the fifth day of November, 1886, Whitney, as such administrator, filed a motion for judgment in the probate court, alleging that Ernst H. Kallmeyer, as executor, had collected the rents belonging to the estate, and prayed judgment against him accordingly ; that, on the twenty-second day of January, 1887, a judgment was entered on this motion for eighteen hundred and seventy-eight dollars ; that execution was issued on the judgment, and the interest of Ernst H. Kallmeyer in the property was

levied upon thereunder; and that, on the seventh day of March, 1887, it was sold by the sheriff to the defendant Peter J. Vanhardenburg.

The foregoing is believed to be a sufficient statement of all facts necessary for a proper understanding of the questions presented by the record. The case was sent to a referee, who took the testimony. The plaintiff filed exceptions to the suggestions contained in the report of the referee as to the proper distribution of the proceeds of sale, which exceptions the court overruled. Afterwards the court entered a decree in accordance with the views and findings of the referee.

The court adjudged that Louis Kallmeyer was entitled to the exclusive use and possession of the homestead, until he should arrive at full age; therefore, it was ordered that the cash value of the income from the homestead, computed from the day of sale until June, 1892, should be deducted from the proceeds of sale of the homestead and paid to the plaintiff, and that there should be an equal distribution of the remainder between Weichman and the plaintiff. The court also found and decreed that, before there could be a distribution of the proceeds arising from the sale of the other property, there must be paid to the plaintiff two hundred dollars per annum from the date of Mrs. Kallmeyer's death up to the time when Ernst H. Kallmeyer's letters of administration were revoked. In addition to this the trial court was of the opinion that the plaintiff ought to be paid the present value of two hundred dollars per annum from October 30, 1889, the day of sale, to June 20, 1892, and it so decreed. The judgment of the court in respect of the last-mentioned items was based on the idea, that Mrs. Kallmeyer by her will did not intend to divide her estate equally between her sons, but in the event she died during the minority of Louis he was to receive two hundred dollars per annum more than one half, until he should reach full age. After deducting the items mentioned, the court ordered

an equal distribution of the remainder between plaintiff and the owners of Ernst's interest. From this order of distribution, the plaintiff has appealed.

The plaintiff's objections to the order of distribution are twofold. He insists, in the first place, that the two hundred dollars per annum, given to him by his mother's will, ought to have been made a charge and prior lien on the separate interest formerly belonging to his brother; secondly, that the court should have decreed one half of the rents collected by Ernst H. Kallmeyer, to be a charge and prior lien in plaintiff's favor on the original interest owned by Ernst in the entire estate.

We are of the opinion that the plaintiff's first objection is without merit. It is quite clear from the reading of Mrs. Kallmeyer's will that she intended, in the event of her death during the plaintiff's minority, to give him the sum of two hundred dollars per annum until he should attain his majority; that the amount should be paid out of her general estate, and it was not intended as a charge against his brother's share alone. The amount is not to be taken from Ernst's share, but, in the language of the testatrix, it is to be paid "out of my estate." This objection will have to be ruled against the plaintiff.

The second objection presents questions, concerning which there is some doubt and difficulty. On the one hand, the plaintiff insists that he, as tenant in common with Ernst H. Kallmeyer, had an equitable lien on the undivided interest of Ernst in the common property, to secure him in the payment of one-half of the rents collected by Ernst, and that the court ought to have enforced this lien against the interest formerly owned by his brother, and made it prior in right to the claims of Weichman and Vanhardenburg. The defendants interpose three objections to this view: *First.* That Weichman and Vanhardenburg are purchasers of Ernst H. Kallmeyer's interest without notice of plaintiff's equitable claim, if he has any such. *Second.* That

Charles M. Whitney, the administrator *de bonis non* of the estate of Maria Kallmeyer, obtained a judgment in the probate court against Ernst H. Kallmeyer, as executor of said estate, for the rents now claimed, and that, by reason of that judgment, the plaintiff, as a co-owner of the land, is estopped in this action from asserting his equitable rights to the rents so collected. *Third.* That this is an action under the statute, and, therefore, the right of the plaintiff for an accounting of rents cannot be enforced in it.

It is conceded by the defendants' counsel that, in an equitable proceeding for partition, when it is made to appear that one of the cotenants has collected more than his share of the rents, the court will take an accounting of the rents thus collected, and it will, by its decree, charge such tenant's interest with the overplus. But they contend that this equitable rule cannot and ought not to be enforced in this case for the reason, that the defendants Weichman and Vanhardenburg are purchasers of Ernst H. Kallmeyer's interest, without any notice of the fact, that he had been collecting the rents, or that he had collected more than his share.

In order to dispose of this question on principle, it will be necessary to inquire into the nature of the claim, which one tenant in common has against his cotenant, to be equalized in rents collected from the common estate, and to ascertain, if we can, the principle upon which the right is predicated. The defendants' theory is that, prior to the decree in partition, there can be no lien for such rents, and that it follows in this case that the plaintiff's claim for rents must be made subordinate to the rights of Weichman and Vanhardenburg for the reason, that they are purchasers for value of Ernst's undivided interest without notice that he had failed to pay to plaintiff his portion of the rents. The authorities relied on by the defendants treat of equitable vendor's liens and the rights of innocent purchasers

in reference thereto. According to the view entertained by us, the law governing equitable vendor's liens can have no application in the determination of the question in controversy.

In the case of *McQuiddy v. Ware*, 67 Mo. 74, the court, in discussing the rights and liabilities of tenants in common in a partition proceeding, said : "As a tenant in common, he (defendant) had a right to use the stone and timber upon the land, and it was his duty to pay the taxes ; and he had a right. to have an account taken of these matters between himself and his cotenants in making the sale or division of the property." In the case of *Rozier v. Griffith*, 31 Mo. 174, the court says : "Courts of equity can enforce the trusts between tenants in common, and, at the same time, make partition and take an account for the rents and improvements or moneys paid for the common benefit. * * * Where one joint owner appears to have received more than his share of the estate, the court will direct an account, and will not, in analogy to proceedings at law for a partition, confine its relief merely to partition" The foregoing cases are the only adjudications of our supreme court, bearing directly on the subject, but the exact question here in judgment was not involved in either case ; hence we are free to decide the matter according to what we conceive to be the true equitable doctrine.

We find no authority in support of the position assumed by the defendants, and, if our conception of the law be correct, there can be none. Our opinion is that each tenant in common is not only vested with the title to his undivided interest in the common estate, but each holds a contingent interest in the entire title, until all equities relating to the tenancy are adjusted. Thus, if one tenant has made necessary and lasting improvements on the common estate, or has paid the taxes legally assessed against it, he will hold the title of his cotenants until he is reimbursed. Or,

if the property has passed by descent, and one of the heirs has received advancements, he must account for the advancements, and the other heirs will hold his title, until their respective interests can be equalized in a partition proceeding. Or, as in this case, if one tenant collects more than his share of the rents, his cotenant will be entitled to demand and receive from him his portion of the rents, and he will be seized of the entire title, until this equitable claim is settled. This is substantially the doctrine of the supreme courts of the states of Indiana (*Peck v. Williams*, 113 Ind. 256; *Foltz v. Wert*, 103 Ind. 404), Pennsylvania (*McCandless' Appeal*, 98 Pa. St. 489) and New York (*Scott v. Guernsey*, 48 N. Y. 106).

In the case of *Peck v. Williams*, *supra*, the plaintiff and one John A. Dyer were tenants in common of certain real estate. The defendant was the purchaser of Dyer's interest at a sale under execution. The court had occasion to discuss the rights and titles of tenants in common, in respect of the common property. It said : "It must be remembered that Mrs. Peck and John A. Dyer, the judgment debtor, were tenants in common. Being a tenant in common, Mrs. Peck had something more than an equitable interest in the whole estate. As such tenant, she was seized of the whole title as well as of an undivided part. Being thus seized, the creditors of her cotenant could not divest her title to any part of the common estate, except upon the condition that her prior equities, as cotenant, should first be adjusted. Creditors of one tenant in common can only enforce their claims against the debtor's interest in the common estate, subject to all the equitable interests of the other tenants therein. Each holds the title as security for the adjustment of all equities as between himself and the other tenants, and a judgment creditor of one tenant in common can no more compel the other tenants to surrender the security, which they hold, without regard to their equities, than

the tenant himself. In that respect the rights of tenants in common are analogous to those of partners in partnership property. One tenant in common cannot, by a sale or incumbrance of his interest, defeat any antecedent right growing out of the cotenancy, which could have been enforced in favor of his cotenant in a proceeding for an equitable partition, or for the specific performance of a contract."

In the case of *Foltz v. Wert, supra*, the same doctrine is declared. In this case, the plaintiff Foltz had purchased the undivided interest of one of the tenants in common at an execution sale, and he sought to have a partition of the land. The defendants alleged that they, together with their cotenant, whose interest had been sold and purchased by Foltz, had inherited the property, and that their former cotenant had received advancements under an agreement that the amounts, thus advanced, should be accounted for by him on a final partition or division of the land. In discussing the rights and liabilities of the respective owners, the court said : " It was not necessary that the agreement (referring to the advancements) should have been in writing, in order that it might be equitably enforced. The agreement was not the creation of a lien upon or the declaration of a trust in land. The rights of parties arose *ex æquo et bono*, upon the distribution or advancements made under it. Each tenant in common was seized of the land *per my et per tout*. Each had the right to hold the title, until all equities relating to the tenancy were adjusted. The enforcement of the rights of cotenants, arising out of property in which they have a common interest, bears a close resemblance to the enforcement of rights between partners. * * * The title of the several cotenants could not be divested or severed by proceedings in partition, except upon equitable terms. Until their equities under the agreement were adjusted, each held the title to the whole as security for its performance, and thus no necessity

existed for creating a lien in the nature of a mortgage by parol, or declaring a parol trust. * * * The rights of one cotenant in the common estate cannot be impaired by liens, acquired on the interest of the other without his consent. His rights are superior to the rights of the lienholder, and he cannot be deprived of any right incident to the partition.''

The court of appeals of New York (*Scott v. Guernsey*, 48 N. Y. 106) decided that the statutory remedy for rents, by one tenant in common against another, is cumulative, and does not bar the equitable adjustment of them on a partition in equity. The court said: ''The rents, on a partition, are a lien upon the shares or interest of any cotenant from whom they may be due.''

When we apply the doctrine of the foregoing authorities to the case at bar, the position assumed by the defendants cannot be maintained. The equitable lien of Louis on the undivided interest of Ernst for the former's share of the rents collected by the latter did not depend, for its validity and efficacy, solely upon the judgment of the court, but it existed previous to any action of the court. Therefore, the claim now made that Weichman and Vanhardenburg were innocent purchasers, without notice of the plaintiff's equitable rights, amounts to nothing. When Weichman took the deed of trust, he knew that Ernst held an undivided interest, and, when he accepted this interest as security for his debt, he took and held it subject to all equities, then existing or afterwards arising between Ernst and Louis in reference to the common estate, which were subject to adjustment on a partition. The deed of trust to Weichman can only be regarded as a security for the debt, and it did not work a divestiture of Ernst's title. Until there was a sale, the relationship of tenants in common between Ernst and Louis remained. Hence Weichman's and Vanhardenburg's title must not only yield to the plaintiff's demand for the rents collected

prior to the deed of trust, but it must be made subordinate to his claim for rents afterwards collected by Ernst as tenant in common.

As to the defendants' second objection, we are of the opinion that plaintiff is not precluded from asserting his claim to the rents, by reason of the fact that the administrator *de bonis non* obtained a judgment therefor against Ernst H. Kallmeyer as executor. This position could only be sustained upon the ground that, as to this proceeding, the plaintiff was a privy of Whitney, the administrator. Respecting the real estate and the rents arising therefrom, the plaintiff, as devisee under the will of his mother, occupied a position antagonistic to Whitney. Therefore, there could be no privity between the two. Touching the action of Whitney in respect of the personal estate, the plaintiff, in the absence of fraud, would be concluded, but not so as to the realty. The real estate descends to the heir, and the administrator or executor has no control over it, unless ordered by the probate court to take possession and collect the rents to pay debts, or unless such power is conferred by will. 1 Woerner, Law Admin. 636.

But it is urged that Ernst, as a matter of fact, collected the rents in his capacity as executor, and that, therefore, the plaintiff must look to him as such for his share of the rents. Upon what principle can this be maintained? Is it grounded on an estoppel? What has the plaintiff (who is a minor) done or said by reason of which he should be precluded from availing himself of the security the law affords him? Grant that Ernst did collect the rents as executor, yet it must be conceded 'that this action of his was wrongful and unlawful. As executor he had no right to collect the rents, but he did have the lawful right to do so as a tenant in common with his brother. We cannot imagine how the plaintiff is bound by this unauthorized conduct of Ernst, unless it be shown that he has ratified the act or in some way consented to be bound. However,

this would be impossible for the reason that he is a minor, and incapable of binding himself in any way.

Lastly, it is argued by defendants that this must be held to be an action under the statute for partition, and that, in such an action, the accounting for rents cannot be had. This objection would prevail, if the defendants were right as to the character of the action. We are clearly of the opinion that the averments are sufficient to make it a proceeding in equity for partition. It is alleged that the rents were collected by Ernst as plaintiff's cotenant; that Ernst was insolvent; that he had failed to pay plaintiff his portion of the same; that plaintiff had not received the two hundred dollars extra allowed him by the will of his mother; that he was entitled to have this made a charge on his brother's interest; and finally the petition concludes with a prayer for an accounting and for general relief. *Humphrey v. Foster*, 13 Gratt. 653. We will likewise rule this point against the defendants.

What we have said, in reference to Louis' right to one-half the rents collected by Ernst, applies only to rents collected in the capacity of a tenant in common. All the plaintiff's equities are based upon the fact that, in the collection of the rents, Ernst was dealing with the real estate as his cotenant. As to the rents collected by Ernst from the homestead, it cannot be said that he received them as the plaintiff's cotenant. At the death of the mother, Louis became seized of the entire homestead during his minority, and Ernst had no more right to collect the rents from it than a stranger. The fact that he did collect them only makes him an ordinary debtor of the plaintiff.

Our conclusion is that, in respect of the rents collected by Ernst H. Kallmeyer, other than those received by him from the homestead, the order of distribution made by the circuit court is wrong. The amount indicated should have been paid to plaintiff, and the remainder divided between him and the other

defendants, according to their respective interests. For this reason the decree of the circuit court will have to be set aside and a new distribution of the funds ordered.

In equity cases, where there is a reversal of the decree by the appellate court, and a direction for judgment is permissible, it becomes the duty of the latter court to order the trial court to enter the proper decree, regardless of the nature of the former decree or the action of the parties in reference thereto. In other words, the entire decree and all questions pertaining thereto are reopened for adjustment. In this case the trial judge was of the opinion that the two hundred dollars allowed to plaintiff by the will of his mother was in the nature of a special charge against the real estate devised by her, and that this item must be adjusted in this proceeding. The original decree was so made. We cannot consent to this view. We regard this item in the nature of a legacy, which was made to depend upon the fact that Mrs. Kallmeyer should die during the plaintiff's minority. The language of the will is that the amount shall be paid "out of my estate." This language cannot be construed to mean that the testatrix intended to make this a direct charge against her real estate; but it is quite evident that she intended that it should be paid like any other legacy, i. e., primarily out of the personalty, if there was sufficient to satisfy the debts and legacy; if not, then the real estate would be bound. For a like reason, as we have previously stated in this opinion, we must hold that Mrs. Kallmeyer did not intend by her will to make this extra allowance to Louis a charge against his brother's interest in the real estate devised. This view has been earnestly pressed upon our attention by the plaintiff's counsel. The books furnish a simple illustration of such a charge. Thus: If a testator devises to A black acre, of a certain estimated value, and to B white acre, of a less value, and the will directs that A shall pay to B the difference, then this will be construed to be a

direct charge in B's favor against the portion devised to A. In such case the absolute direction is for A to pay B the amount of the difference, and, by implication, the title to the land devised to A is made to depend upon its payment. But no such implication can arise in this case.

We, therefore, conclude that the circuit court's order of distribution was also wrong in respect of the legacy to Louis. No account whatever should be taken of it. The plaintiff's rights in reference thereto must be worked out in the probate court.

The decree and order of distribution made by the circuit court will, therefore, be set aside, and the cause remanded, with directions to the circuit court to modify its decree in conformity with this opinion. All the judges concurring, it is so ordered.

### ON MOTION FOR REHEARING.

THOMPSON J.—The cases cited in support of the motion for rehearing do not support the position, that a special legacy is chargeable on the land, irrespective of the question whether there are personal assets. After further consideration, we have concluded that the cause may be ended in the circuit court without resorting to the probate court. We shall, therefore, so modify our judgment as to direct the circuit court, if either party shall so move, to inquire whether any personal assets came into the hands of the executor or of the administrator *de bonis non*, etc., which might, after the payment of preferred demands, be applied to the payment of this two-hundred-dollar-a-year legacy. If no such motion is made, or if it should appear on such motion, that there were no such assets, then the decree, in so far as it relates to this legacy, should be allowed to stand as it is. If there were such assets, other than cash, the court should ascertain

what they produced at the executor or administrator's sale, if sold, or what they would probably have produced, if sold at the proper time and under proper conditions, and this amount, added to the cash, if any, should be deducted from the amount charged upon the fund in court in respect of the two-hundred-dollar-a-year legacy ; or if it equals or exceeds the sum found to be chargeable in respect of this legacy, then that part of the decree should be entirely expunged. It is so ordered. All the judges concur.