Melvin FIELDS and Shirley Fields,
Appellants (Plaintiffs),

v.

Mary S. EVANS, Appellee (Defendant),

Bobby Winchester and Shirley
Winchester, Appellees
(Plaintiffs).

No. 2–684A163.

Court of Appeals of Indiana,
Second District.

July 23, 1985.

Sidney E. McClellan, Muncie, for appellants.

Phillip E. Stephenson, Browne, Spitzer, Herriman, Browne, Stephenson & Holderead, Marion, for appellees.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Plaintiffs-appellants Melvin and Shirley Fields [hereinafter collectively referred to as the Fieldses] appeal the denial of their complaint to set aside a tax deed issued to Ralph Evans (Ralph) and subsequently con-

veyed to defendant-appellee, Mary Evans (Evans), claiming they were "former owner(s)" entitled to notice from the county auditor of their right to redeem the property prior to issuance of a tax deed.

We reverse.

## FACTS

This litigation arose from a complaint filed by the Fieldses in May of 1979 to set aside a tax deed to property they owned in Delaware County, Indiana. The case was tried to the bench, and the evidence included stipulated items and testimony. The following facts, as determined by the trial court, are not disputed by the parties.

In July of 1976, notice of the pending tax sale for nonpayment of property taxes was sent to Bobby and Shirley Winchester [hereinafter collectively referred to as the Winchesters], who were then the record owners of the property, but this notice was returned undelivered. Notice was also published once each week for three consecutive weeks during July of 1976 in two local newspapers.

On July 31, 1976, the Winchesters conveyed the property to the Fieldses by warranty deed. Soon thereafter, on September 2, 1976, the property was sold at a tax sale to Ralph for $107.07.

Almost two years elapsed when, on May 26, 1978, the Fieldses recorded their warranty deed with the auditor of Delaware County. On July 7, 1978, notice of the right to redeem the property before issuance of the tax deed was sent *to the Winchesters* by the county auditor and again returned undelivered. At no time did the county auditor send to the Fieldses notice of their right to redeem. Then on August 14, 1978, the county auditor delivered a tax deed to Ralph Evans.

To recapitulate, the Fieldses recorded their ownership of the property almost three months before the tax deed was issued to Ralph and over one month before notice of the tax deed was sent to the Winchesters. The county auditor, however, never sent notice to the Fieldses of

their right to redeem the property. The trial court determined that the notices which were sent by certificate of mailing to the Winchesters substantially complied with the statutes governing the tax sale procedure and therefore found in favor of Evans. More importantly, it found that the grounds raised by the Fieldses for setting aside the tax deed did not fall within the provisions of Ind.Code 6–1.1–25–16 (1982) for defeating a tax deed.

The Fieldses now appeal.

## ISSUE

We need address only one issue presented by the Fieldses:

Whether the Fieldses were entitled to notice by certified mail of their right to redeem the property before the issuance of a tax deed?

## DECISION

PARTIES' CONTENTIONS—The Fieldses contend that they were the "former owners" of the real property, as contemplated by IC 6–1.1–25–6, and were entitled to notice by certified mail of their right to redeem the property before the issuance of a tax deed. They argue further that the uncontested findings of fact show that they were never sent such notice and therefore the finding of the trial court in favor of Evans was error as a matter of law.

Evans replies that the "former owners" who were entitled to notice of the tax deed were the owners of record at the time of the tax sale. As so defined, the Fieldses were not entitled to notice. Evans argues further that the Fieldses were not entitled to notice because they delayed nearly two years in recording their interest in the property and because they had notice of the tax sale from the county auditor's records.

CONCLUSION—The Fieldses were entitled to notice because the term "former owner" as employed by IC 6–1.1–25–6 means owner of record at the time notice of the impending tax deed is required to be sent.

Like a used car buyer we are concerned with the words "former owner." Our concern leads us to the current statutes governing tax sales of real estate to satisfy delinquent property taxes. The present statutory framework is contained in IC 6–1.1–24–1 to –25–19. Property may be sold after notice by publication and certified mail. IC 6–1.1–24–3, –4. The tax sale purchaser receives a certificate of sale which constitutes a lien against the property and is registered in the auditor's office. IC 6–1.1–24–9. Any person with an interest in the property may redeem the property at any time before a tax deed is issued. IC 6–1.1–25–1. The tax deed is issued upon application by the tax sale purchaser after a two year waiting period, IC 6–1.1–25–4, and after notice to the "former owner" by certified mail. IC 6–1.1–25–6.

IC 6–1.1–25–16(7) provides that the original owner may defeat a tax deed by proving "that the notices required by IC 6–1.1–24–4 and [IC 6–1.1–25–6] were not given in the manner prescribed in those sections." Under IC 6–1.1–25–6, the "former owner" is entitled to notice of the forthcoming tax deed.

"(a) *The county auditor shall send a notice by certified mail to the former owner of real property not more than sixty (60) days nor less than thirty (30) days before a tax deed for the property is executed and delivered* under this chapter. The county auditor shall prepare the notice on the form prescribed by the state board of accounts. The notice shall contain:

(1) the name of the former owner as determined by reference to the transfer book of the county auditor;

(2) the description of the real property shown on the certificate of sale;

(3) a statement that the real property was sold at a tax sale;

(4) the date the real property was sold;

(5) the name of the purchaser;

(6) a statement that the former owner is entitled to redeem the real property;

(7) the amount of money required to redeem the real property;

(8) a statement that the purchaser, or his successors or assigns, is entitled to reimbursement for additional taxes or special assessments on the real property paid by him subsequent to the tax sale and before redemption;

(9) a statement that the real property has not been redeemed; and

(10) a statement that the purchaser, or his successors or assigns, is entitled to receive a deed for the real property if it is not redeemed before a certain date.

(b) The county auditor shall retain in his office a copy of such notice required by this section, and he shall certify on the copy that the notice was mailed in the manner prescribed in this section and the date on which the notice was mailed."

IC 6–1.1–25–6 (emphasis supplied).

On its face this statute seems unambiguous, requiring notice be given to the former owner that a tax deed will issue. But when read with companion statutory sections, other possible meanings emerge. Different persons could be "former owners" at different stages of the proceedings depending on changes in title. IC 6–1.1–24–9(a)(2) employs the term "former owner," apparently referring to the owner of record at the time of the tax sale. IC 6–1.1–25–1, however, refers to this same person as simply an "owner" when discussing who may redeem the property sold at tax sale. Thus, it is not clear to whom the "former owner" of IC 6–1.1–25–6 refers.

■ Evans argues that the "former owner" must be the owner of record at the time of the tax sale. It is our opinion, however, that the term "former owner" of IC 6–1.1–25–6 means the owner of record when notice of the impending tax deed is sent. This interpretation is supported by the prior statute on this subject. "The legal history of a statute, including prior statutes on the same subject, is a valuable guide for determining what object an act is supposed to achieve." 2A N.J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 48.-03, at 291 (1984).

A former version of what is now IC 6–1.1–25–6 provided:

"Not more than sixty [60] days nor less than thirty [30] days prior to the date when any purchaser, his heirs or assigns, of lands or lots at any tax sale for delinquent taxes or assessments is eligible to be issued or is issued a tax title deed from the county auditor for such lands or lots, the *county auditor shall prepare and send a written notice* by United States ordinary mail plainly addressed *to the owner or owners of record as shown by the transfer books in the office of such county auditor on the date such written notice is prepared. The written notice* shall be in such form as shall be prescribed by the state board of tax commissioners and *shall clearly state the name of the owner or owners determined by reference to the transfer books of the auditor as herein required,* (1) a description of the lands sold at such tax sale, (2) that such lands were sold at tax sale, (3) the date when such tax sale was held, (4) the name of the purchaser of such lands at the tax sale, (5) that the owner or owners as determined by reference to the transfer books of the auditor is entitled to redeem such lands sold at such tax sale, (6) the amount required to redeem such lands sold at such tax sale, (7) that the purchaser may also become entitled to reimbursement for any other taxes paid on such lands prior to any redemption, (8) that such lands have not been redeemed, (9) the last date on which such lands may be redeemed from tax sale, and (10) that if such lands are not redeemed by such date the said purchaser, his heirs or assigns, shall be entitled to receive a tax title deed to such lands."

Ind.Ann.Stat. § 64–2229. (Burns 1961) (repealed 1963). That IC 6–1.1–25–6 continues to provide notice of the impending tax deed to the owner then of record is also indicated by the requirement that the notice contain the "name of the former owner as determined by reference to the transfer book of the county auditor." IC 6–1.1–25–6(a)(1). Further reference to the transfer book of the county auditor would not be necessary if the tax deed notice were to be sent to the person who was the owner of record at the time of the tax sale.

■ In addition, when faced with alternative constructions, we will reject the one which presents serious constitutional difficulties. 2A N.J. SINGER, *supra,* at § 45.11. "[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action....'" *Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 795, 103 S.Ct. 2706, 2707, 77 L.Ed.2d 180 (quoting *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865).

■ It is beyond cavil that the interest enjoyed by an *owner* of real property is sufficient to require notice of tax sale proceedings when the owner's name and address are known. *See Mennonite, supra.* Evans's construction of IC 6–1.1–25–6, however, would deny notice of the impending tax deed to a title holder who records a deed during the two year redemption period.[1] Such a construction is illogical. It fails to "employ a reasonable interpretation of statutory language as a means of dis-

---

1. Testimony by Ruth Franks of the Delaware County Auditor's Office showed that the failure to provide actual notice to the Fieldses was attributable here to the procedures employed by the auditor's office, and not to the fact that the Fieldses recorded three months before the end of the redemption period.

"Q. Now is notice then sent out to the landowner again prior to the time that the deed is transferred?
A. Yes, yes, it is.

Q. And where do you procure the name of the parties at that time as to who to send the notice to?
A. Uh, whatever name is on that tax sale record is where we send the....
Q. So it would have been the name on the transfer record as of the date of sale?
A. It would have been the name of the, person's name whose name it was on the tax sale, right."
*Record* at 126–27.

covering the legislature's true goals. It cannot be presumed that our lawmakers expect their enactments to be applied in an illogical or absurd manner." *Pryor v. State* (1973), 260 Ind. 408, 412, 296 N.E.2d 125, 127. We can only conclude that the legislature did not intend an absurd result, *i.e.,* that those with a clear ownership interest in the property, such as the Fieldses, are deprived of notice while others without an interest in the property, such as the Winchesters, receive notice. *See Mennonite, supra.* The entire thrust of the prior and present statutes, which require notice be given to the title owner at various stages of the tax sale proceedings, is to afford every reasonable opportunity to title holders that their real estate is being conveyed to a third party to satisfy delinquent taxes and that the property may be redeemed before that cataclysmic event takes place. While it may be somewhat of a statutory misnomer to classify the Fieldses as "former" owners, they are in effect the persons the statute was designed to protect.

■ Finally, we are unpersuaded by Evans's argument that the Fieldses, because they had notice of the tax *sale* when they recorded their warranty deed, were not entitled to notice of the pending tax *deed.* This view ignores the specific language of the statute which requires notice of an impending issuance of a tax deed, under IC 6–1.1–25–6, even when an owner received notice of a tax sale under IC 6–1.1–24–4. Evans's reading of the statute is also defective because of the effect of the tax deed, which is to divest the owner of title. Evans would have us hold that the issuance of a tax deed is an automatic event of little importance to the Fieldses. A tax deed, however, does not automatically issue at the end of the redemption period, but issues only *after* the delivery of the tax sale certificate. IC 6–1.1–25–4. The tax sale is preparatory to the transference of title and merely creates a lien against the property in favor of the tax sale purchaser. IC 6–1.1–24–9. Thus, it is reasonable to conclude that the issuance of the tax deed substantially affected the Fields-

es' ownership interest in the property and the Fieldses, as owners then of record, were entitled to notice of this proceeding. *Mennonite, supra. See also Griffin v. Griffin* (1946), 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (due process requires that notice be given before a *further* legal proceeding alters substantially a defendant's rights) *cited in Mennonite, supra,* at 2712 n. 6. Construing the statute in conformance with constitutional requirements of notice, we hold that the Fieldses are "former owners" under IC 6–1.1–25–6.

Reversed and remanded for proceedings consistent herewith.

SHIELDS, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Today's decision holds that "former owner" as used in IC 6–1.1–25–6 (Burns Code Ed.1984) means "owner of record at the time notice of the impending tax deed is required to be sent." (Majority opinion, p. 576). I would agree if we were construing the predecessor statute and its notice requirements. That former version, as noted by the majority, required notice after the tax sale to be given of the impending tax deed. It required that such notice be given to the "owner or owners of record ... on the date such written notice is prepared." (Majority opinion, p. 578). The Indiana General Assembly, however, substantially changed the requirements of that notice requirement by enacting the present version of the statute.

I.C. 6–1.1–24–4 (Burns Code Ed.1984), the statute which requires notice of an impending tax sale, dictates that such notice be sent to the "owner or owners of the real property." Use of the words "former owner" with regard to the person entitled to notice after the tax sale should not be considered a meaningless choice of words. That legislative phrasing has significance to me and should be interpreted to refer to the owner prior to the tax sale and not to whomever might appear as the owner of

record after the tax sale but prior to delivery of the tax deed. To construe the provision as does the majority here, is to totally disregard the word "former."

The nature of the amendment leads me to the conclusion that the legislature intended that a search of the ownership records need not be made to determine whether the record owner at the time of the tax sale might possibly have conveyed his interest. It indicates to me that it was intended to give notice to the record owner at the time of the tax sale that the tax sale has in fact taken place and that unless action is taken prior to delivery of the tax deed, his redemption rights will be lost.

The statute in question permits the notice of the impending tax deed to be given on any one of thirty (30) days, i.e., not more than sixty (60) nor less than thirty (30) days before delivery of the deed.

If the auditor were to send out the notice sixty (60) days before delivery of the tax deed, and if the record owner as of that date were the same as the record owner as of the date of the tax sale, a subsequent grantee under the majority's interpretation would not receive, nor be entitled to notice. If such subsequent grantee obtained title within the thirty (30) day period following notice he would not be protected. I do not believe that the legislature intended the thirty (30) day administrative flexibility, with reference to the giving of notice, to affect the identity of the person entitled to such notice. Again, I necessarily conclude that the legislature intended a "make sure" second notice be given to the owner of record at the time of the tax sale.

My assessment of the legislative intent is made with acknowledgment of two arguably conflicting factors.

First, I am unable to totally reconcile the present use of the term "former owner" with the provisions of I.C. 6–1.1–24–9 (Burns Code Ed.1984) which do not state that the tax sale purchaser obtains ownership or title but state that he is entitled to a certificate of sale and a lien against the property for the amount that he has paid. I know of no preclusion against one having an "ownership" interest from holding a lien against the property itself. Yet the "lien" —"former owner" language is not entirely consistent. In any event the lien interest created here, affords the tax sale purchaser security for the amount paid at the tax sale in preference to all other prior lienholders. It is at least arguable that this statutory protection was not intended to affect the notice provisions of I.C. 6–1.1–25–6.

On the other hand, the fact that the Fieldses might have protected themselves by a reasonably prompt recordation of their deed could suggest that they should not be permitted to defeat the tax title of Evans by resort to a technical interpretation of the statute.

I have no doubt that the admittedly defective notice to the Winchesters of the impending tax sale was no notice at all. I have no doubt that as between the Winchesters and the Fieldses, the Fieldses owned the real estate at the time of the tax sale as well as at the time of delivery of the tax deed to Evans. It is also apparent that the tax delinquency was of record at the time Fieldses received their deed from the Winchesters; and that at the time Fieldses finally recorded their deed, within the redemption period, the certificate of tax sale was of record.

These factors bear only upon whether the statute in question can be improved upon. They do not compel or permit an interpretation which, in my view, is contrary to the legislative intendment of the language used in the statute itself.

It is for the General Assembly to smooth out the rough edges of this statutory scheme. It is not for us to write a better or more fair statute.

For these reasons, I dissent.