Daniel GELLER and Mucea Marrs, Appellant (Defendant-Intervenors Below),

v.

Mary R. MEEK, and J. Perry Meek Realty Co., Inc., Appellees (Plaintiffs Below),

and

James L. Wells, Sheriff of Marion County (Defendant Below).

No. 2–484A112.

Court of Appeals of Indiana, Second District.

July 30, 1986.

Craig D. Doyle, William R. Richards, Indianapolis, for appellant.

John F. Wickes, Jr., James H. Hanson, Indianapolis, for appellees Mary R. Meek and J. Perry Meek Realty, Co., Inc.

Gary W. Bippus, Thomas Weliever, Indianapolis, for James L. Wells, Sheriff of Marion County.

SHIELDS, Judge.

Daniel Geller and Mucea Marrs appeal the trial court's judgment in favor of Mary R. Meek and J. Perry Meek Realty Co., Inc., declaring the Meeks' judgment lien superior to Geller and Marrs' execution lien and permanently enjoining the Marion County Sheriff from exposing certain real estate to a sheriff's sale pursuant to Geller and Marrs' execution levy.

We reverse.

### FACTS

In April of 1981, Geller and Marrs obtained a $199,200 judgment against San Antonio Inns (San Antonio) in the Johnson County Circuit Court and caused a writ of execution to be issued on August 19, 1981, to the sheriff of Marion County where the subject real estate owned by San Antonio was located. On October 6, 1982, the Marion County Sheriff entered Geller and Marrs' writ of execution in the sheriff's attachment and levy docket.[1] In late October of 1982 Geller and Marrs telephoned the Meeks of their intention to proceed with a levy upon San Antonio's Marion County real estate. On November 9, 1982, the sheriff levied upon San Antonio's property[2] and set the execution sale for December 15, 1982.

Meanwhile, in August of 1982, the Meeks acquired a tax sale certificate for San Antonio's Marion County property at a tax sale for $3,681.36.[3] They procured a title search on the San Antonio real estate in November and then again in December. The two title searches, dated November 17 and December 1, 1982, failed to reveal Geller and Marrs' judgment or the execution levy.

On December 1, the date of the second title search, the Meeks obtained a $994,000 judgment against San Antonio Inns, Inc. in the Hancock County Circuit Court. The judgment was duly entered in the Marion County judgment docket[4] on that same day. On December 14, 1982, Geller and Marrs duly entered their 1981 judgment in the Marion County judgment docket. Two days later they paid the lis pendens filing fee and notice of their writ of execution was entered in the lis pendens docket.[5] On

1. The parties stipulated the Marion County Sheriff entered Geller and Marrs' execution writ in the sheriff's attachment and levy docket on October 6, 1982, and again on November 1, 1982. The record does not reveal when the sheriff received the writ of execution.

2. Ind.Code Ann. § 34–1–45–5 (Burns 1973) provides: "An execution against property issued to another county, shall bind the real estate of the defendant from the time of the levy."

3. Ind.Code Ann. § 6–1.1–24–1 (Burns Repl.1984) provides for the public auction of real property for delinquent property taxes. Upon the sale of such property to the highest bidder, a certificate of sale is issued to the "purchaser" who "acquires a lien against the real property for the entire amount that he paid. The lien of the purchaser is superior to all liens against the real property which exist at the time the certificate is issued." Ind.Code Ann. § 6–1.1–24–9(b) (Burns Repl.1984).

4. Ind.Code Ann. § 34–1–45–2 (Burns 1973) states: "All final judgments for recovery of money ... shall be a lien upon real estate ... in the county where, and only where, such judgment has been duly entered and indexed in the judgment docket."

5. Ind.Code Ann. § 34–1–4–3 (Burns Supp.1985) requires the sheriff to file a notice in the lis pendens docket upon levy pursuant to a writ of execution issued by the court of another county "Provided, That such sheriff or coroner shall not be required to file such notice until the attachment or execution-plaintiff shall have furnished the money to pay the clerk for filing and recording the same."

December 14, 1982 the Meeks filed a petition to permanently enjoin any sale of the subject real estate pursuant to Geller and Marrs' execution levy. They also obtained an order temporarily restraining the execution sale scheduled for December 15, 1982. The Meeks subsequently amended their petition to request a declaratory judgment defining the rights of the parties.

On March 8, 1984, the trial court rendered judgment against Geller and Marrs. Pertinent portions of the trial court's entry read:

"1. By virtue of the tax sale of August 9, 1982, Meek Realty is equitable owner of the Property subject to a right of redemption of two (2) years held by certain interested parties enumerated in I.C. § 6-1.1-25-1, of which Intervenors [Geller and Marrs] are not one.[6]

2. Priority among liens against real estate is determined by perfection [citation omitted]. An execution issued from another county becomes a lien against real estate at the time of levy, I.C. § 34-1-45-5, but the execution lien is perfected by the filing of notice in the lis pends [sic] docket. I.C. § 34-1-4-3. The failure to file lis pendens notice is fatal to perfection [citation omitted].

. . . . .

6. Intervenors have failed to perfect their execution lien in accordance with statutory procedures. The failure to comply with such requirements results in the levy of execution having no force and effect against bona fide encumbrancers. Ind.Code § 34-1-4-8 [citation omitted].[7]

. . . . .

10. Plaintiffs, as a judgment creditor, have given value. A judgment creditor gives value, for without value, he could not be a creditor.

. . . . .

12. Plaintiffs are legitimate judgment creditors who recorded their judgment in Marion County and thereby became bona fide encumbrancers of real property of the judgment debtor located in Marion County. Therefore, Intervenors' levy of execution was of no force or effect against Plaintiffs, who were bona fide encumbrancers."

Record at 66-68.

On June 7, 1984, during the pendency of this appeal, Geller and Marrs requested the trial court for a stay to prevent the Meeks from converting their tax sale certificate into a tax deed at the expiration of the statutory two year redemption period on August 9, 1984 [sic].[8] The trial court set the motion for a hearing on July 20, 1984, but rescheduled it for July 24, 1984 when the Meeks requested a hearing date which would allow sufficient time for an application to the Court of Appeals in the event the motion for stay was denied. However, in the second week of July the trial court, on its own motion, notified the parties the hearing would be rescheduled and notification of the precise date would follow. On July 26, 1984, the court, sua sponte, rescheduled the hearing for September 25, 1984, six weeks after the expiration of the redemption period on August 8, 1984. On August 10 the Meeks delivered their tax sale certificate to the county auditor. They

---

6. Ind.Code Ann. § 6-1.1-25-1 (Burns Repl.1984) states: "An owner, occupant, lienholder, or other person who has an interest in real property sold under IC 6-1.1-24 may redeem the property at any time before a tax deed is issued by paying to the county treasurer the amount required for redemption under section 2 [6-1.1-25-2] of this chapter."

7. Ind.Code Ann. § 34-1-4-8 (Burns Supp.1986) provides: "Until the proper notices required by this article have been filed with the proper clerk, the bringing of suits ... and the levy thereon under execution ... shall not operate as constructive notice ... of the seizure of or levy upon such real estate, nor of [sic] any force or effect against bona fide purchasers or encumbrancers of the same."

8. Ind.Code Ann. § 6-1.1-25-4(a) (Burns Repl. 1984) provides, in pertinent part: "If a certificate of sale is issued to a purchaser under IC 6-1.1-24-9 and the real property is not redeemed within two [2] years after the date the certificate is issued ... the county auditor shall, upon receipt of the certificate ... execute and deliver a deed for the property to the purchaser."

received a tax deed to San Antonio's property on August 17, 1984. Based upon the tax deed, which purports to convey title free and clear of all liens,[9] the Meeks filed a motion to dismiss the appeal as moot. This court denied the motion to dismiss on January 11, 1985.

For ease of reference, the significant events related above are as follows:

4/20/81 Geller and Marrs' obtain $199,-200 judgment in Johnson County.

8/19/81 Writ of execution issued to Marion County Sheriff.

8/9/82 Meeks acquire tax sale certificate.

10/6/82 Marion County Sheriff enters writ in sheriff's attachment and levy docket.

10/82 Meeks informed of Geller and Marrs' (late Oct.) intention to proceed with a levy upon the subject real estate.

11/9/82 Sheriff levies.[10]

11/82–12/82 Meeks' title searches do not reveal Geller and Marrs' judgment or writ.

12/1/82 Meeks obtain $994,000 judgment in Hancock County. Meeks' judgment entered in Marion County judgment docket.

12/14/82 Geller and Marrs' judgment entered in Marion County judgment docket. Meeks' TRO issued.

12/16/82 Geller and Marrs pay fee for filing lis pendens notice and notice is entered.

3/8/84 Trial court adjudicates Meeks' lien superior to that of Geller and Marrs'.

8/8/84 Statutory two year redemption period for tax sale expires.

8/17/84 Meeks receive tax deed.

9. Ind.Code Ann. § 6–1.1–25–4(d) (Burns Repl. 1984) provides in pertinent part: "A tax deed executed under this section vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances except the lien of the state for taxes and special assessments which accrue subsequent to the sale and which are not removed under subsection (c) of this section."

Issue

This appeal raises two key issues:

(1) whether the trial court erred in determining Geller and Marrs do not have the right to redeem the property for which the Meeks hold a tax sale certificate, and

(2) whether the trial court erred in determining the relative priorities of the parties' various liens upon San Antonio's Marion County real estate.

DISCUSSION

I.

Geller and Marrs contend the trial court erred in finding they do not have the right to redeem San Antonio's Marion County property. Geller and Marrs argue the Meeks did not become "equitable owners" of the San Antonio property by virtue of the tax sale certificate, as the trial court found, but only lienholders. Therefore, Geller and Marrs' execution and judgment liens, even though acquired after the tax sale, became liens against the subject real estate and Geller and Marrs, as lienholders, have a right to redeem the tax sale certificate.

We agree.

■ First, Meeks acquired a lien upon the subject real estate and not title, either legal or equitable, by virtue of the tax sale certificate. Ind.Code Ann. § 6–1.1–24–9(b) (Burns Repl. 1984) states in pertinent part: "When a certificate of sale is issued under this section, the purchaser acquires a *lien* against the real property for the entire amount that he paid" (emphasis added).

10. The record is silent as to why Geller and Marrs did not take advantage of their opportunity to redeem the tax sale certificate between this date and the date the trial court adjudicated otherwise. However, within the two year redemption period Geller and Marrs were barred from redemption by the trial court's judgment. Further, also within the two year period, Geller and Marrs unsuccessfully sought judicial intervention in the issuance of the tax deed pending appeal of the adverse judgment.

Further, in a recent case examining the due process requirements of tax sale statutes, we recognized the limited legal interests of the tax sale purchaser prior to the issuance of the tax deed. In *Fields v. Evans* (1985), Ind.App., 480 N.E.2d 575, we held although the effect of a tax deed is to divest the owner of title, "the tax sale is merely preparatory to the transference of title and *merely creates a lien* against the property in favor of the tax sale purchaser" (emphasis added). *Id.* at 579. On rehearing, we affirmed this view and concluded:

> "Based on the words and effect of the statutes controlling tax sales and tax deeds, however, we conclude that the tax sale and the tax deed are separate events determining rights and interests in property and therefore require separate notices, as specified by statute.
>
> The tax sale creates a lien against the property that may ripen into full ownership at some later time by the issuance of a tax deed."

*Fields v. Evans* (1985), Ind.App., 484 N.E.2d 36, 38.

■ Thus, both by statute and judicial decision, a tax sale purchaser is not the "equitable owner" of the real estate.[11] Instead, he is merely a lienholder for the amount of taxes paid. The tax sale purchaser's interest may ripen into ownership only if the certificate is not redeemed within the statutory period. Therefore, Geller and Marrs' levy of execution on November 9, 1982 created a lien on the San Antonio real estate because: (1) title to the property rested in San Antonio Inns, Ind.Code Ann. § 34–1–45–1 (Burns 1973),[12] and (2) the act of levying gave rise to a lien, Ind.Code Ann. § 34–1–45–5 (Burns 1973).[13] As lienholders Geller and Marrs are entitled to

redeem the subject property. I.C. § 6–1.1–25–1.

There is no merit to the Meeks' contention even if Geller and Marrs had an interest in the property by virtue of the levy of their writ of execution and their judgment, they nevertheless do not have a right to redeem the tax sale certificate because Geller and Marrs' interest arose *subsequent* to the tax sale. In support of their position the Meeks point to the following phrase contained in I.C. § 6–1.1–25–1: "[a]n owner, occupant, lienholder, or other person *who has an interest in the property sold*" (Meeks' emphasis). This language, they argue, means the right of redemption extends only to parties whose interests arose prior to and existed at the time of the tax sale.

We disagree.

In enacting IC § 6–1.1–25–1 the legislature did not distinguish between interests arising prior and those arising subsequent to the sale despite the ease with which they could have done so. Rather, as written, the statute conforms to the general purpose underlying all redemption statutes, whether related to foreclosure, execution, or tax sales, which is to allow parties whose interests will be extinguished by the issuance of a deed the opportunity to protect those interests by redemption. *Dawson v. Overmyer* (1895), 141 Ind. 438, 40 N.E. 1065.

■ A tax deed conveys title free and clear of all liens in existence prior to the execution of the deed. Ind.Code Ann. § 6–1.1–25–4(d) (Burns Repl.1984).[14] Therefore, the redemption statute gives an "owner, occupant, lienholder, or other per-

---

**11.** Indiana has long followed the lien theory of mortgages and encumbrances, rejecting the common law notion that a mortgage was a conveyance of the entire estate. *See Baldwin v. Moroney* (1910), 173 Ind. 574, 91 N.E. 3; *Fletcher v. Holmes* (1870), 32 Ind. 497; *Grable v. McCulloh* (1867), 27 Ind. 472; *Oldham v. Noble* (1946), 117 Ind.App. 68, 66 N.E.2d 614.

**12.** Ind.Code Ann. § 34–1–45–1 (Burns 1973) states, in pertinent part: "The following real estate shall be liable to all judgments and at-

tachments, and to be sold on execution against the debtor owning the same, or for whose use the same is holden, viz: First. All lands of the judgment debtor, whether in possession, remainder or reversion."

**13.** *See supra* note 2; *See e.g., Hamilton v. Byram* (1890), 122 Ind. 283, 23 N.E. 795.

**14.** *See supra* note 9.

son who has an interest" in the property the right to redeem the tax sale certificate and thereby prevent his interest from being extinguished without regard to when the interest arises so long as it arises before the redemption period expires. Ind.Code Ann. § 6-1.1-25-1 (Burns Repl.1984).[15] Meeks' tax deed would statutorily extinguish Geller and Marrs' execution and judgment liens acquired before the redemption period expired. Therefore, the redemption statute grants them the right to redeem and thereby prevent the extinguishment of their liens. Accordingly, the trial court erred in concluding Geller and Marrs did not have a right to redeem the tax sale certificate and, consequently, the trial court erred in enjoining the execution sale while at the same time denying Meeks' the opportunity to protect their liens by redeeming the tax sale certificate.

## II.

Having concluded Geller and Marrs held a lien on the subject real estate, the issue becomes whether that lien is superior to the Meeks' judgment lien.[16]

The trial court found "[p]riority among liens against real estate is determined by perfection."[17] Record at 66. The court

concluded because Geller and Marrs' execution lien was not "perfected" until a lis pendens notice was filed, and because the Meeks recorded their judgment before the lis pendens notice was filed and before Geller and Marrs filed their judgment in Marion County, the Meeks have the prior lien.[18]

■ Although the trial court correctly recited a general principle of real property law when it stated the time of perfection determines priority,[19] this general rule is expressly modified by statute. Ind.Code Ann. § 34-1-4-8 (Burns Supp.1985) provides an execution levy shall not have "any force or effect as against bona fide purchasers or encumbrancers of the same" until the lis pendens notice is filed.[20] Applying the rules of statutory construction, the enumeration of the terms "bona fide purchasers or encumbrancers" implies the exclusion of all others from the protected status.[21] Therefore, an unperfected (in the sense it does not appear in the lis pendens docket) execution levy has force and effect against all parties except bona fide purchasers or encumbrancers. Thus, as to all parties except bona fide purchasers and bona fide encumbrances, priorities are de-

**15.** *See supra* note 6.

**16.** This discussion on priorities is restricted to the relative priorities of Meeks' judgment lien and Geller and Marrs' execution and judgment liens. The Meeks' lien resulting from the tax certificate is not in issue.

**17.** The trial court cites *Muniz v. United States* (1958), 129 Ind.App. 433, 155 N.E.2d 140, for this proposition. *Muniz,* however, did not address the conflict between a judgment lien and an execution levy. Rather, it involved a priority dispute between two judgment creditors and specifically interpreted a federal statute giving claims of the United States priority when a debtor became insolvent. In *Muniz,* the United States asserted its judgment, though not docketed in the county where the debtor's real estate was located, nevertheless had priority over a judgment acquired subsequent in time which was docketed. The court held the federal statute did not create a lien on real estate. Rather, it only gave the United States priority against all other unsecured creditors. Therefore, the United States' unsecured claim to the debtor's real property was inferior to a judgment creditor's

lien that arose by being docketed in the county where the real estate was located.

**18.** Specifically, the trial court found "[t]he failure to file a lis pendens notice is fatal to perfection." Record at 66.

**19.** *See* Ind.Code Ann. § 32-1-2-16 (Burns Repl. 1980) (Indiana's recording statute for real property).

**20.** The statute necessarily concerns entities who become encumbrancers after the levy has occurred because the levy has no effect upon the rights of encumbrancers whose interests arise prior to the levy.

**21.** In construing statutes, Indiana courts follow the maxim "expressio unius exclusio alterius," which means the enumeration of certain things in a statute implies the exclusion of all others. *Common Council of City of Peru v. Peru Daily Tribune, Inc.* (1982), Ind.App., 440 N.E.2d 726; *In re Wardship of Turrin* (1982), Ind.App., 436 N.E.2d 130; *Maroon v. State Dept. of Mental Health* (1980), Ind.App., 411 N.E.2d 404.

termined by the date the lien accrues. Here, the Meeks docketed their judgment before Geller and Marrs docketed theirs. However, the sheriff levied Geller and Marrs' writ of execution before the Meeks filed their judgment. Therefore, unless the Meeks are bona fide purchasers or encumbrancers, Geller and Marrs have the superior lien because they were first in time. *Atlas Securities Company v. Grove*, (1922), 79 Ind.App. 144, 137 N.E. 570; *Brownell Improvement Company v. Nixon* (1910), 48 Ind.App. 195, 92 N.E. 693.

The Meeks argue the trial court properly found they are bona fide encumbrancers against whom Geller and Marrs' execution lien is a nullity. We disagree. The Meeks are not bona fide encumbrancers and, therefore, they possess a lien inferior to the execution lien of Geller and Marrs.

The doctrine of bona fide purchaser/encumbrancer,[22] which originated in equity, rests upon the principle equity should protect a party who has in good faith relied upon the public records and changed his position as a result of that reliance. *Dicus v. Ripley County Bank, Osgood, Indiana* (1984), Ind.App., 471 N.E.2d 1257; *Huntingburg Production Credit Association v. Griese* (1983), Ind.App., 456 N.E.2d 448. To constitute bona fide encumbrancers, the Meeks must have acted in good faith without actual or constructive notice of the execution lien and have given value. *Myers v. Cochran* (1868), 29 Ind. 256; 14 I.L.E. *Execution* § 95 (1959).[23]

The good faith of the Meeks is not in dispute. We also do not concern ourselves with the trial court's finding the Meeks did not receive actual or constructive notice. Instead, we concentrate on the trial court's conclusion the Meeks gave value because "without value, [they] could not be a creditor." Record at 67–68. In so concluding,

the trial court erroneously defined the concept of value as it applies to a bona fide encumbrancer whose status is that of a judgment creditor.

■ In the context of a bona fide encumbrancer, "value" denotes the party has changed his position in reliance upon the public record. *See Huntingburg Production Credit.* Thus, a prospective mortgagee, for example, will initially search the public records to determine what liens, if any, exist on the property to be mortgaged. In reliance upon what the public record shows, he then gives some value in exchange for acquiring a lien on the property. If it later appears a third party previously acquired a lien on the same property but failed to record notice of that lien in the public records, the mortgagee's status as a bona fide encumbrancer protects his interest from that lien.

■ In this case, then, the question is whether, between the date Geller and Marrs acquired their execution lien and the date notice of that lien was filed in the lis pendens docket, the Meeks parted with some consideration, divested themselves of a legal right, or were otherwise induced to change their position because the public record failed to reveal Geller and Marrs' lien. Although the Meeks presumably parted with something of value when they entered into the transaction with San Antonio Inns underlying their judgment, the undisputed facts establish the Meeks did not give new consideration or otherwise change their position in reliance upon the lis pendens record. In filing their judgment in the Marion County judgment docket, the Meeks simply exercised their statutory right to obtain a lien upon any real estate in Marion County owned by San Antonio Inns. Because there was no re-

---

**22.** The Meeks argue the term bona fide purchaser "is a term of art with specific legal meaning, while 'bona fide encumbrancer' is not." Appellees' Brief at 25. There is no Indiana case law supporting this argument. Further the Meeks offer no policy rationale for their different treatment of the two terms and we find none.

**23.** The trial court also found the Meeks became bona fide encumbrancers "by virtue of such recordation (of their judgment)" Record at 64–65. As the above discussion illustrates, the status of bona fide encumbrancer requires good faith, no notice, and value. The mere act of docketing a judgment does not render a judgment creditor a bona fide encumbrancer.

liance by the Meeks, they do not qualify as bona fide encumbrancers protected by IC § 34-1-4-8.

Alternatively, the Meeks assert the requirement of value, while applicable to some encumbrancers such as mortgagees, is not necessary when the encumbrancer is a judgment creditor. This is because the rationale underlying the requirement of value—i.e., danger of fraud by the debtor—does not exist when the judgment creditor creates the lien through the legal process.

The Meeks are correct in recognizing the prevention of fraud by the debtor as a policy underlying the concept of bona fide purchaser/encumbrancer. They are incorrect, however, in concluding fraud is related to the element of value. To the contrary, "value" relates to proof of harm—always a prerequisite for obtaining equitable relief. It is when value is given that a party incurs harm from the fraud. Here, the Meeks are not bona fide encumbrancers precisely because they did not incur any harm as a result of Geller and Marrs' failure to file the lis pendens notice—i.e., they did not give value. Because the Meeks are not bona fide encumbrancers, their lien is inferior to the execution lien of Geller and Marrs and the trial court's contrary determination is erroneous.

Thus, the trial court erred in permanently enjoining the sheriff from selling San Antonio's real estate pursuant to Geller and Marrs' levy of execution without first allowing Geller and Marrs the opportunity to redeem the property. Only if redemption does not occur is the trial court's act appropriate. Geller and Marrs had a lien upon the subject real estate which entitled them to redeem the real estate and to cause the sale of the real estate at an execution sale. Thus, Geller and Marrs must now be permitted to redeem the subject real estate and then, if redemption occurs, have the Sheriff of Marion County proceed with an execution sale.

The trial court's judgment is vacated and this cause is remanded to the trial court with instructions to first set aside the tax deed previously issued to the Meeks and then to provide Geller and Marrs a reasonable time to redeem the tax sale certificate. If redemption occurs the execution sale may proceed; if it does not, the tax deed shall reissue.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

MILLER, J., sitting by designation, concurs.

SULLIVAN, J., concurs, with separate opinion.

SULLIVAN, Judge, concurring.

This case demonstrates the complexity and convolution of the methods whereby we seek to protect real estate interests. More accurately, perhaps, it demonstrates that the prevailing system of recordation *fails* to protect interests in real estate.

Our decision concerns the inter-relationship and conflict between and among judgments, tax deeds, executions, levys, notices, lis pendens dockets, certificates, judgment dockets, filing fees, attachments, liens, attachment and levy dockets, execution sales, tax sales, etc., etc., *ad nauseum*. If ever there was doubt as to the need of sensible, updated, simplified and centralized records concerning real estate interests in the state, this case should dispel that doubt. Be that as it may, the issue before us concerns the law in its present form and we must deal with it.

I agree that the Meeks are not bona fide encumbrancers entitled to rely upon the state of the lis pendens records. I do so because they had actual notice of the lien held by Geller. This notice was conveyed during a telephone conversation between Perry Meek and the attorney for Geller. The notification that Geller intended to proceed with the execution levy gave Meeks knowledge of the claim of the lien and was sufficient to prevent Meeks from a successful assertion of the lack of knowledge. *Altman v. Circle City Glass Corp.* (1985)

2d Dist.Ind.App., 484 N.E.2d 1296, *trans. denied.*

My conclusion in this regard leads to the further conclusion that the lis pendens exception for bona fide encumbrancers is not relevant in this case.

Even were it otherwise, I would hold that the Meeks are not entitled to the protection of the lis pendens exception to the execution levy priority. I would not do so, however, on the grounds that by failing to rely upon the state of the lis pendens record the Meeks suffered no harm and therefore gave no "value." The majority, I believe, unduly complicates the issue. It appears to me that the trial court was in error because a judgment lien arises not out of a giving of value or the suffering of a detriment but rather by operation of law following litigation. *Bell v. Bingham* (1985) 2d Dist.Ind.App., 484 N.E.2d 624. It is my view that the "bona fide encumbrancer" appellation is simply inapplicable to the holder of a judgment lien.

That judgment liens are not afforded the same protection as other equities and liens is established in the law. *Foltz v. Wert* (1885) 103 Ind. 404, 2 N.E. 950; *Jones v. Rhoads* (1881) 74 Ind. 510; *Huntingburg Production Credit Assn. v. Griese* (1983) 1st Dist.Ind.App., 456 N.E.2d 448. It therefore does no violation to the law to reason that judgment lienholders are not within the purview of I.C. 34–1–4–8 (Burns Code Ed.Supp.1986).

Notwithstanding these expressions of disagreement, I fully concur in the reversal and remand for further proceedings.