John H. CALHOUN, Jr., Appellant (Plaintiff Below),

v.

Barbara J. JENNINGS, Auditor of Hamilton County, Polly Pearce, Auditor of Hamilton County, Robert A. Chandler, Sheriff of Hamilton County, and Rushville National Bank of Rush County, Indiana, Appellees (Defendants Below).

No. 29S02–8607–CV–652.

Supreme Court of Indiana.

Aug. 27, 1987.

Rehearing Denied Oct. 29, 1987.

John H. Calhoun, Jr., Indianapolis, pro se.

Anthony O. Crowell, Edwin L. Gagnon, Byrum, Gagnon & Diehl, Indianapolis, Robert J. Eder, Earnest, Foster, Eder, Levi & Northam, Rushville, John M. Kyle, Campbell, Kyle & Proffitt, Noblesville, for appellees.

DICKSON, Justice.

This direct appeal challenges the constitutionality of the statutory notice provisions in tax sale proceedings. The trial court entered summary judgment against the plaintiff, finding that the statutory notice provisions violated the requirements of the due process clause of the fourteenth amendment to the United States Constitution. We disagree and reverse.

On September 5, 1975, Park Thirty-One Corporation (Park Thirty-One) granted a mortgage upon 8.503 acres of unimproved Hamilton County land to First National Bank of Kokomo (First National). First National recorded the mortgage on September 8, 1975. Park Thirty-One then failed to pay the taxes payable during the years 1978 and 1979. Upon Park Thirty-One's default on mortgage payments, First National initiated foreclosure proceedings on September 8, 1980, and the Hamilton Circuit Court on May 15, 1981, ordered foreclosure and sale of the property to satisfy First National's judgment. However, on July 10, 1981, the Hamilton County Auditor, due to delinquent real estate taxes from 1978 and 1979, sent a notice of tax sale pursuant to Ind.Code § 6–1.1–24–4, to the owner of record, Park Thirty-One. No such notice was sent to First National, nor was such notice statutorily required under Ind.Code § 6–1.1–24–4.2 (since changed) which then provided in part:

(a) ... [T]he county auditor shall send a notice of sale to any mortgagee of real property which is subject to sale under the provisions of this chapter, if the mortgagee, annually, on a form prescribed by the state board of accounts, has:

(1) Requested that notice of a sale of the real property be sent to him; and

(2) Agreed to pay a fee to the county auditor, to cover the cost of sending notice. * * *

First National neither requested that such notice be sent nor agreed to pay the statutory notice fee. On August 4, 1981, Rushville National Bank (Rushville National) purchased the land at the sheriff's foreclosure sale. Two relevant independent events occurred on August 10, 1981: John H. Calhoun purchased the property at the tax sale, and the sheriff executed the foreclosure sale deed to Rushville National. Two days later, Rushville National recorded the deed, conveyed the subject property to Marion J. Auman and Allene Auman, and received a mortgage from the Aumans. The deed to the Aumans and their mortgage to Rushville National were recorded August 14, 1981. Approximately twenty months later, on March 17, 1983, Rushville National initiated foreclosure proceedings due to the Aumans' default in mortgage payments. The Hamilton Circuit Court, on May 18, 1983, ordered foreclosure and sale of the property to satisfy Rushville National's judgment. Rushville National then

purchased the property at the sheriff's foreclosure sale on July 15, 1983, and recorded the sheriff's deed on July 20, 1983. Throughout this entire period, Rushville National was unaware that the real estate taxes due from 1978 and 1979 remained unpaid.

Indiana law provides for the sale of real property on which payments of property taxes have been delinquent for 15 months or longer. Ind.Code § 6–1.1–24–1 *et seq.* The successful bidder at such a sale receives a tax sale certificate and a lien against the property for the entire amount paid. Ind.Code § 6–1.1–24–9. The tax sale is followed by a two-year redemption period during which one who has an interest in the property may redeem the property. Ind.Code § 6–1.1–25–1. If no one redeems the property during the redemption period, the purchaser may apply for a deed to the property. The county auditor is required by statute, upon receipt of the tax sale purchaser's certificate, to execute and deliver a tax deed to the purchaser. Ind.Code § 6–1.1–25–4. A separate statutory provision requires the auditor to send written notice to "the former owner of the real property" not more than 60 days nor less than 30 days before the tax deed is executed and delivered. This notice must inform· the former owner that he is entitled to redeem the property, the amount required to redeem, and that the tax sale purchaser will receive a deed to the property if not redeemed by a certain date, etc. Ind.Code § 6–1.1–25–6.

Shortly before expiration of the two-year redemption period, the county auditor on July 6, 1983, sent a "Notice of Redemption or Issuance of Tax Deed" to the owners of record, the Aumans. No such notice was sent to Rushville National, nor was any such notice then required under Indiana statute. On August 31, 1983, Calhoun tendered the tax sale certificate to the county auditor and sought a tax title deed. Even though the land had not been redeemed from the tax sale, the auditor refused to give Calhoun a deed. On August 8, 1984, Calhoun tendered his tax sale certificate for a second time, and the auditor, upon advice of counsel, again refused to deliver the deed. On that same day, Calhoun initiated this litigation. Rushville National paid the redemption amount to the Hamilton County Treasurer on August 28, 1984.

Recapitulating, the significant events in chronological order are:

| | |
|---|---|
| September 5, 1975 | Park Thirty-One gives mortgage to First National |
| September 8, 1975 | First National records mortgage |
| 1978–1979 | Real estate taxes not paid |
| September 8, 1980 | First National files complaint to foreclose mortgage |
| May 15, 1981 | Court orders foreclosure and sale of land at sheriff's sale |
| July 10, 1981 | County auditor sends "Notice of Tax Sale" to owner of record, Park Thirty-One |
| August 4, 1981 | Rushville National purchases land at foreclosure sale |
| August 10, 1981 | Calhoun purchases land at tax sale and; Sheriff executes and delivers foreclosure sale deed to Rushville National |
| August 12, 1981 | Rushville National records sheriff's deed and conveys to Aumans; Aumans give mortgage to Rushville National |
| August 14, 1981 | Aumans record deed Rushville National records mortgage |
| March 17, 1983 | Rushville National files complaint to foreclose mortgage |
| May 13, 1983 | Court orders foreclosure and sale of land at sheriff's sale |
| July 6, 1983 | County auditor sends "Notice of Redemption or Issuance of Tax Deed" to owners of record, the Aumans |
| July 15, 1983 | Rushville National purchases land at foreclosure sale |
| July 20, 1983 | Rushville National records sheriff's deed |
| August 10, 1983 | Statutory two-year minimum redemption period expires |
| August 31, 1983 | County refuses Calhoun's demand for tax deed |
| August 4, 1984 | Calhoun again demands, and County refuses to issue tax deed; Calhoun files complaint |
| August 28, 1984 | Rushville National pays redemption amount |

Calhoun sought an order mandating the county auditor to convey to him the land and a further order quieting title as against any interest held by Rushville National. Alternatively, Calhoun sought money damages equal to the fair market value of the property against Hamilton County for failing to convey the tax title deed. Rushville National filed a counterclaim for

quiet title. All parties moved for summary judgment on the amended complaint, and Rushville National moved for summary judgment on its counterclaim. The trial court initially granted summary judgment in favor of Calhoun, but subsequently granted Rushville National's motion to correct errors and entered a summary judgment in favor of Rushville National. The trial court concluded, *inter alia*, that Indiana's notice provisions in tax sale proceedings violate the due process clause of the fourteenth amendment as construed in *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180, and *Fields v. Evans* (1985), Ind.App., 480 N.E.2d 575, *reh. denied*, 484 N.E.2d 36. The tax sale proceedings in this case were held invalid because of a lack of notice to First National of the pending tax sale, and a lack of notice to Rushville National of the contemplated tax sale redemption and issuance of deed.[1]

■ A purchaser at a tax *sale* receives a *tax certificate* evidencing a lien against the property for the entire amount paid. The lien is superior to all other liens which exist at the time the certificate is issued. Ind.Code § 6-1.1-24-9. Following a two-year redemption period, the purchaser at the tax sale may tender the tax certificate, at which time the county is required to execute and deliver a *tax deed* vesting in the grantee an estate in fee simple absolute. Ind.Code § 6-1.1-25-4. The tax deed holder may then initiate an action to quiet title against all persons claiming an interest in the property. Ind.Code § 6-1.1-25-14. The tax deed may be set aside if it is found that taxes for which the property was sold were not actually owed, or that the property was properly redeemed before execution of the deed. Ind.Code § 6-1.1-25-11.

■ Prior to the tax *sale*, the county auditor is required to 1) publish notice of sale (Ind.Code § 6-1.1-24-3), 2) send notice of sale to record owners at their last known address (Ind.Code § 6-1.1-24-4), and 3) send notice of sale to the mortgagee of the property *if* the mortgagee requests such notice and agrees to pay a fee covering the cost of sending such notice (Ind.Code § 6-1.1-24-4.2, since amended).

■ Prior to the issuance of a tax *deed*, the county auditor is only required to send actual notice to the "former owner" to provide him with a final opportunity to redeem the property. Ind.Code § 6-1.1-25-6. *See Field v. Evans* (1985), Ind.App., 480 N.E.2d 575, *reh. denied*, 484 N.E.2d 36 (construed statute in such a manner as to mandate actual notice to all reasonably ascertainable title holders). There is no statutory requirement to provide actual notice to a mortgagee of record.

In *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed. 180, the Supreme Court of the United States addressed the question of whether notice by publication and posting provides a mortgagee of real property with adequate notice of a proceeding to sell the mortgaged property for non-payment of taxes. Relying on *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, and its progeny, the Court held that mere publication and posting of notice was inadequate to the mortgagee of record under the due process clause of the fourteenth amendment. Justice Marshall, writing for the majority, stated:

> Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale. *Cf. Wiswall v. Sampson*, 14 How. 52, 67, 14 L.Ed. 322 (1853). When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone

---

**1.** Calhoun also appeals from the trial court's decision that his alternative claim for damages against Hamilton County officers was barred by the Indiana Tort Claims Act, Ind.Code § 34-4-16.5-1.et seq. Because of our resolution of the principal question presented, we deem it unnecessary to address the Tort Claims Act question.

does not satisfy the mandate of *Mullane*. (footnote omitted)

*Mennonite*, 462 U.S. at 798, 103 S.Ct. at 2711, 77 L.Ed.2d 187.

Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Id.* at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 189.

*Notice of Tax Sale Proceeding*

It is undisputed that under the statutory wording, Rushville National was not entitled to actual notice of the tax sale because Rushville National did not even record its deed until after the tax sale. Rushville National argues, and the trial court agreed, that Ind.Code § 6–1.1–24–4.2 is unconstitutional because it requires that a mortgagee *request* notice and agree to pay a fee before the county is required to give actual notice of a pending tax sale. Rushville National contends that the statute therefore contravenes the mandate of *Mennonite* which requires actual notice to a mortgagee when the name and address are reasonably ascertainable.[2] Rushville National further argues, and the trial court agreed, that because First National did not receive notice of the sale, the tax *sale* itself was invalid.

■ Calhoun argues, *inter alia*, that the trial court erred in even considering the constitutionality of Ind.Code § 6–1.1–24–4.2 because Rushville National cannot rely on the alleged deprivation of the due process rights of First National in defending against Calhoun's action, and therefore lacks standing to attack the constitutionality of the tax sale notice provision. We agree.

In *City of Indianapolis v. Indiana State Board of Tax Commissioners* (1974), 261 Ind. 635, 308 N.E.2d 868, we stated:

For disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question of whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us.

Thus in Indiana the standing requirement is stated in terms of the requirement of a party to show injury. *Board of Commissioners v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92. Although a judgment against Rushville National would constitute a direct pecuniary injury, there is no indication that such an injury was *caused* by the operation of the allegedly unconstitutional statute.

It was incumbent upon Rushville National to show injury by operation of the statute in order to litigate the constitutionality of the statute. To conclude that Rushville National's potential loss of its interest in the property would not have occurred but for the failure to give notice to First National of the pending tax sale involves unwarranted speculation. Rushville National's failure to show injury flowing from any failure of the county to notify First National deprives them of standing to litigate the constitutionality of the notice provision for tax sales. We therefore need not address the merits on this issue.

*Notice of Tax Deed*

Because Rushville National lacks standing to challenge the constitutionality of the notice provision for tax sales, the crucial issue becomes whether Rushville National was entitled to actual notice of the opportunity to redeem the property prior to the issuance of the tax deed. We note first that while this question was presented to the Supreme Court in *Mennonite*, the Court expressly chose not to reach the tax *deed* notice question because it concluded that the failure to give adequate notice of

---

2. We note that the state legislature has since modified the statute in such a way as to remove the alleged constitutional infirmity. *See,* Ind. Code § 6–1.1–24–4.2 [As added by Acts 1980, P.L. 45, § 1; P.L. 60–1986, § 4].

the tax *sale* proceeding deprived the appellant of due process. *See, Mennonite,* 462 U.S. at 800, n. 6, 103 S.Ct. at 2712, n. 6, 77 L.Ed.2d at 188, n. 6.

■ Rushville National argues, and the trial court agreed, that the *Mennonite* holding mandated actual notice prior to the issuance of the tax deed, primarily because the issuance itself is a proceeding which adversely affects the property interest of a reasonably ascertainable party. The trial court relied in part on *Fields v. Evans* (1985), Ind.App., 484 N.E.2d 36, (on petition for rehearing) in which then Chief Judge Buchanan stated:

"Even if we are to assume that no notice was required by statute, we would nevertheless be forced to conclude that, as applied here, constitutional standards of notice were not met." *Id.,* p. 38, and "... we conclude that the tax sale and the tax deed are separate events determining the rights and interests in the property and therefore require separate notices, as specified by statute." *Ibid.,* and

"... I.C. 6–1.1–25–1 provides that those with an interest in the property may redeem it at any time before a tax deed is issued. Given the untoward result of a failure to redeem, notice to interested parties of the right to redeem is required as an element of due process." *Ibid.,* and,

"... recent cases have required, at minimum, notice by mail to those whose interests appear in the public record. *See e.g., Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 1180." *Id.,* p. 39.

Although *Fields* involved the right of the property owner to notice prior to the issuance of the tax deed, the trial court in the instant case found the principle applicable by analogy to a mortgagee of record.

The tax sale and issuance of a tax deed are "separate events determining the rights and interest in property," but it does not necessarily follow that due process requires separate notice to a mortgagee prior to the issuance of the tax deed. A review of *Mullane v. Central Hanover Bank &*

*Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, and *Texaco, Inc. v. Short* (1982), 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738, is helpful in resolving the issue.

*Mullane* involved the constitutional sufficiency of notice by publication to trust beneficiaries affected by the judicial settlement of accounts by the trustee of the fund. The Court stated that, at a minimum, due process requires "that deprivation of life, liberty or property *by adjudication* be preceded by notice and opportunity for hearing appropriate to the nature of the case." 339 U.S. at 313, 70 S.Ct. at 656–57, 94 L.Ed. at 873 (emphasis added). The Court further observed:

An elementary and fundamental requirement of due process in any proceeding *which is to be accorded finality* is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873 (emphasis added). In *Texaco, supra,* the Supreme Court of the United States affirmed this Court's decision upholding the constitutionality of Indiana's Mineral Lapse Act, a statute extinguishing unused mineral interests after 20 years unless the owner filed a statement of claim. Rejecting a due process attack on the lack of a requirement to actually notify the mineral rights owner prior to the lapse of his interest in the property, the Supreme Court in *Texaco* construed the due process standards of Mullane as applicable to adjudications which are to be accorded finality, but *not* applicable to a proceeding brought to determine whether a lapse of a mineral estate did or did not occur. Justice Stevens stated:

Appellants simply claim that the absence of specific notice prior to the lapse of a mineral right renders ineffective the self-executing feature of the Indiana statute. That claim has no greater force than a claim that a self-executing statute of limitations is unconstitutional. The Due Process Clause does not require a de-

fendant to notify a potential plaintiff that a statute of limitations is about to run, although it certainly would preclude him from obtaining a declaratory judgment that his adversary's claim is barred without giving notice of that proceeding. 454 U.S. at 536, 102 S.Ct. at 796, 70 L.Ed. at 755.

We view the two year period of redemption following a tax sale as analogous to the self-executing feature of the Indiana Mineral Lapse Act involved in *Texaco. Mennonite* requires that actual notice be given to reasonably ascertainable parties of interest prior to the acquisition of a superior lien on the property by a tax sale purchaser. However, it would require an unwarranted expansion of *Mennonite* to conclude that the interested parties are entitled to notice of a lapse of the redemption period. Following the expiration of the redemption period, the tax sale purchaser, upon tendering the tax sale certificate, is absolutely entitled to have a tax deed executed and delivered. Ind.Code § 6-1.1-25-4. Although issuance of the deed vests in the grantee title to the property in fee, it does not, in itself, constitute a "final adjudication" as the title is still subject to challenge in a quiet title action. The tax sale purchaser himself may choose to initiate such an action, Ind.Code § 6-1.1-25-14, in which case *Mullane,* as construed in *Texaco,* would require that all reasonably ascertainable parties with an interest in the property receive actual notice.[3] This is the due process to which interested parties are entitled under the Constitution. We hold that the due process clause of the fourteenth amendment does not require that actual notice be given of either the lapse of the redemption period or the subsequent issuance of the tax deed.

*Timeliness of Redemption*

Rushville National argues alternatively that they are entitled to the property in question because they redeemed the property prior to the actual issuance of the tax deed.

Ind.Code § 6-1.1-25-1 provides that anyone with an interest in real property sold at a tax sale may redeem the property at any time before a tax deed was issued. The undisputed facts indicate that no redemption was attempted until after Calhoun tendered his tax sale certificate and the county refused to execute and deliver the deed. Rushville National now seeks to capitalize on the county's non-compliance with the statutory requirement to execute the tax deed by arguing that such non-compliance extended their time to redeem. We disagree. Upon tendering the tax sale certificate following the expiration of the two-year redemption period upon unredeemed property, Calhoun had an unconditional right to have the tax deed executed and delivered. We hold that Rushville National's right to redeem the property terminated upon Calhoun's timely presentment of the tax sale certificate. Rushville National's subsequent payment of the assessment required for redemption is of no avail.

In light of the foregoing, we reverse the trial court's grant of summary judgment in favor of Rushville National. This case is now remanded for further proceedings consistent herewith.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.

---

3. Such notice is also required by Ind.Code § 6-1.1-25-14, which mandates that a plaintiff shall include as defendants in the action all parties who, based on the real property records, appear to have an interest in or lien against the property. The party adverse to the tax deed holder can have the tax deed set aside if it is found that the land was not actually subject to the taxes for which it was sold or if the land was properly redeemed before the deed was executed. Ind.Code § 6-1.1-25-11.